THE LONDON ASSURANCE CORPORATION, Appellant, *v.* JOSEPH W. THOMPSON, Respondent.

1. INSURANCE — CONTRACT OF REINSURANCE MAY COVER LESS RISK THAN THAT ASSUMED BY ORIGINAL POLICY.  While a contract of reinsurance implies the same subject-matter of insurance as the original policy and runs against perils of the same kind, it need not be for the identical hazard insured against in the first policy, but may be for a less though not for a greater risk.

2. WHEN INSURED IS RESPONSIBLE FOR AMBIGUITY IN CONTRACT OF REINSURANCE.  An ambiguity in the description of the risk in a policy of reinsurance is not to be resolved against the reinsurer because of the general rule that as insurance policies are unilateral contracts prepared by the insurers they are responsible for any ambiguity arising out of the language used in their policies, but must be determined against the original insurer, where the words of description were furnished by the latter

to the reinsurer and the policy of reinsurance was issued to it, using the exact language which it had itself prepared and furnished.

3. CONSTRUCTION OF POLICY OF REINSURANCE. The loss by fire of rosin stored in the open yards around warehouses is not covered by a policy of reinsurance, prepared by the insured, of naval stores while located and contained as described in such policy, with a subsequent specific limitation of the risk to rosin, etc., in barrels while awaiting shipment, "in or on the warehouses and⁄or sheds of" the insured named in the original policy, such reinsurance being "to the full extent of" the interests of the reinsured "as herein described," "within the limits above named," followed by a requirement of a monthly report to the reinsurer of the total amount of insurance written by it on the naval stores "in the above described warehouses, etc.," since whatever ambiguity arises from the use of the word "on" must be resolved against the insured.

*London Assurance Corpn.* v. *Thompson,* 54 App. Div. 637, affirmed.

(Argued January 24, 1902; decided February 25, 1902.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered November 22, 1900, affirming a judgment in favor of defendant entered upon the report of a referee.

The nature of the action and the facts, so far as material, are stated in the opinion.

*William W. MacFarland* for appellant. The subject of reinsurance was the plaintiff's terminal risk on naval stores without regard to the manner of the storage of such naval stores. (*Jackson* v. *S. P. F. & M. Ins. Co.,* 90 N. Y. 124.) In the construction of any contract or instrument whatever, intention controls and overrides mere forms of expression in case of antagonism. (*Tillit* v. *Mann,* 104 Fed. Rep. 421; *Kauffman* v. *Bader,* 108 Fed. Rep. 171; *Heine Co.* v. *France,* 105 Fed. Rep. 413; *N. Y. L. Ins. Co.* v. *Baker,* 165 N. Y. 488; *Matter of Ross,* 140 U. S. 453; *U. S.* v. *Kirby,* 7 Wall. 486; *Seimens* v. *Sellers,* 123 U. S. 285; *Roe* v. *Trauman,* Willes, 632.)

*Michael H. Cardozo* and *Edgar J. Nathan* for respondent. The judgment upon the report of the referee having been unanimously affirmed at the Appellate Division, no question

of fact is open for argument in this court. (*Consolidated Ice Co.* v. *Mayor, etc.*, 166 N. Y. 92 ; *Hilton* v. *Ernst,* 161 N. Y. 226 ; *Marden* v. *Dorthy,* 160 N. Y. 39 ; *Reed* v. *McCord,* 160 N. Y. 330.) There was no sufficient proof of any custom sufficient to enlarge the meaning of the words used in the reinsurance contract. (*C. I. Co.* v. *Mayor, etc.*, 166 N. Y. 92 ; Richards on Ins. 137, § 130 ; Lawson on Usages, 250 ; 1 Duer on Ins. 157 ; *Schooner Reeside,* 2 Sumn. 567 ; *Blackett* v. *R. E. Assur. Co.,* 2 C. & J. 244.)

Vann, J. This is a controversy between insurers which turns upon the construction of a policy of reinsurance. The plaintiff is a foreign insurance corporation and the defendant is one of several individual underwriters, who issue what are known as Lloyds policies and do business under the name of the New Jersey State Fire Association. The policy of the plaintiff, issued to Patterson, Downing & Co., covered "all risks by railroads and/or other inland conveyances and in warehouses, yards or elsewhere from the time bills of lading are signed for the goods until the same shall have been laden on board vessels or lighter at such ports for shipment ; on rosin, turpentine and other goods commonly known as Naval stores * * *. This policy also to cover goods as herein described, the property of the Downing Co., or in which said company may be interested as owner or agent." There was also a marine risk which is not here important.

The policy of the defendant was of the New York standard form, whereby the underwriters agreed to "*reinsure the London Assurance Corporation* * * * against all direct loss or damage by fire * * * to the following described property while located and contained as described herein and not elsewhere, to wit, on the fire risk on naval stores, *i. e.,* rosin, turpentine, etc., in barrels, while waiting shipment, in or on the warehouses, and/or sheds of *Downing & Co.* at *Brunswick, Georgia,* and insured under policies issued by the London Assurance Corporation, marine branch. The same being naval stores of other parties intended for foreign or

domestic shipment for which the London Assurance Corporation is liable under the terms of its marine policies issued to shippers.    It is the true intent and meaning of this policy to fully indemnify the London Assurance Corporation for each and every loss by fire within the limits above named to the full extent of its interests as herein described,   *   *   *   in consideration of which and the indemnity hereby guaranteed the London Assurance Corporation hereby covenants and agrees to report to this association at the end of each month the total amount of insurance on naval stores that has been written by said corporation *in the above described warehouses, &c.,* and to pay to this association its proportionate part of a premium at and after the rate of five cents for every one hundred dollars so insured.    This policy is subject to the same fire risks, conditions, interpretations, valuations, indorsements and assignments as are or may be assumed or adopted by the London Assurance Corporation, and loss, if any, payable at the same time and in the same manner as they pay.   *   *   *   This policy shall continue to protect all merchandise already accepted by the London Assurance Corporation or for which they may be liable, until the same has passed beyond the limits of this policy."

Of the part thus quoted from the policy the words in italics are in manuscript, and, with this exception, all before the words " to-wit " is part of the printed form and all after is typewritten.    The italicised words, " in the above described warehouses, &c," are interlined in manuscript in the typewritten part.

After a loss had occurred the plaintiff paid Patterson, Downing & Co. the amount called for by their policy, and then brought this action to recover from the defendant his proportion thereof according to the contract of reinsurance, without making any effort to reform it.    The defendant, however, by a counterclaim, sought to reform it in his interest, but was defeated, and the attempt is now immaterial.

The referee adopted the short form of decision, but found specifically that " a typewritten paper purporting to set forth

the · terms upon which said reinsurance was made, was prepared by the plaintiff and furnished to the said New Jersey State Fire Association and is attached to and forms part of the said policy of reinsurance ; that said reinsurance is thereby declared to be," quoting the part above set forth describing the risk.

The referee further found that " a fire occurred at said yards of Downing & Co., in Brunswick, by which a large quantity of turpentine and rosin, covered by the policy issued by the plaintiff to said Patterson, Downing & Co., was destroyed. \* \* \* None of the rosin which was destroyed or damaged by said fire was in or on the warehouses, and ╱ or sheds of Downing & Co., at Brunswick, but the whole thereof was deposited or stored, while waiting shipment, in the open yard of Downing & Co." He held that the rosin was not covered by the policy of reinsurance, and gave judgment for the loss on the turpentine only.

It appeared from the evidence that the yard of Downing & Co. was 540 feet long by 190 feet wide, and was bounded on the east by the tracks of a railroad and on the west by navigable water connected with the Atlantic ocean. In the center of the yard was a shed 300 feet long by 50 feet wide and, contiguous thereto, a storehouse of the same width and 100 feet in length.

The plaintiff claims that as the contract was one of reinsurance, it was an insurance of the plaintiff's identical risk, and not an independent insurance of specific property in a defined locality ; that the intention was that the reinsurance should cover the plaintiff's terminal risk, whatever it was, and that the words " in or on the warehouses and ╱ or sheds " should yield to an intention springing conclusively from the fact that the plaintiff's undertaking was to reinsure.

While the insurable interest of the plaintiff depended upon the policy issued by it to Patterson, Downing & Co., it does not follow that the contract of reinsurance covered all the risks thus assumed, for the policy was valid if it covered only a part thereof. Thus, while the policy issued by the plaintiff covered three general risks, inland, terminal and marine, the policy

issued to it related to only one risk, which was the terminal. It was not essential that the contract of reinsurance should cover even the entire terminal risk assumed by the plaintiff, for it was within the power of the parties to agree that it should cover a part of that risk only and to limit it to the property in question, while it was in a certain place at the terminal port. " When the insurer for some reason finds it convenient that another shall bear either in whole or in part the liability to the insured which he has assumed, and agrees with another insurer to assume the whole or a part of his liability as regards the insured, it is termed a contract of reinsurance." (1 Biddle on Insurance, sec. 378; *Insurance Company of North America* v. *Hibernia Insurance Company*, 140 U. S. 565.) While a contract of reinsurance implies the same subject-matter of insurance as the original policy, and runs against perils of the same kind, it need not be for the identical hazard insured against in the first policy, but may be for a less, though not for a greater risk. (*Philadelphia Insurance Co.* v. *Washington Insurance Company*, 23 Pa. St. 250, 253; 1 May on Insurance, secs. 9, 11.) In a case relied upon by the plaintiff, one company reinsured another company on "their interest as insured under their policy" issued to the owner of the property, and hence both policies necessarily covered the same risk by express description. (*Jackson* v. *St. Paul F. & M. Ins. Co.*, 99 N. Y. 124.)

Reinsurance, like any other contract, depends upon the intention of the parties, to be gathered from the words used, taking into account, when the meaning is doubtful, the surrounding circumstances. Custom or usage is presumed to enter into the intention when it is found as a fact, not only that it existed, but was uniform, reasonable and well settled, and either known to the parties when the contract was made, or so generally known as to raise a presumption that they had it in mind at the time. (*Rickerson* v. *Hartford Fire Insurance Co.*, 149 N. Y. 307, 316; *Walls* v. *Bailey*, 49 N. Y. 464, 469.) Evidence was given tending to show that it is the custom to store turpentine under cover, as otherwise the

barrels would swell, shrink and leak from exposure to the rain and sun, and to store rosin in the open, because it is solid and not apt to be injured by the weather. Rosin is the residuum left from the process of distilling turpentine and is poured into barrels while in a liquid or semi-liquid state. When it cools it hardens like plaster of paris and will stand alone as if it were of solid stone, even if taken out of the barrels. There was evidence, however, that the custom is not uniform or well settled and that rosin is also stored, but largely for convenience, in sheds and warehouses. The referee did not find the existence of a custom with reference to the storage of rosin, and hence, as we held in a recent case, in view of the unanimous affirmance, it is negatively established that no such custom existed. (*Consolidated Ice Co.* v. *Mayor etc. of N. Y.*, 166 N. Y. 92.) We can presume in support of a judgment that such findings were made, provided they are warranted by the evidence, as are necessary to sustain the conclusions of law, but we cannot so presume in order to reverse a judgment. (*People* v. *Adirondack Railway Co.*, 160 N. Y. 225.)

The general rule is that as insurance policies are unilateral contracts prepared by the insurers, they are responsible for any ambiguity arising out of the language used by them, and hence in construing that language all doubt is resolved against them because they created it. (*Kratzenstein* v. *Western Assurance Co.*, 116 N. Y. 54.) Ordinarily an ambiguity in the policy as to whether the rosin was covered, although it was not in the sheds or warehouses, but in the yard adjacent thereto, would be determined against the insurer by applying the rule already referred to. This case, however, is peculiar in that the words of the policy describing the risk were those of the insured and not of the insurer, for, as the referee found, the former presented a typewritten slip to the latter and asked for reinsurance according to the terms therein stated, and the defendant, without seeing the policies issued by the plaintiff, issued the policy in suit to the plaintiff, using the exact language which it had itself prepared. During the negotiations

which led to the policy under consideration there was no discussion as to the nature or extent of the risk, which was treated by both parties as accurately described in the typewritten slip subsequently attached to the policy as a part thereof. There was discussion in relation to the premium to be charged and other matters, but none as to the risk to be assumed, and the defendant had no means of knowing, if such was the fact, that the plaintiff wished to have any risk covered, other than that described in the slip. The risk thus described by the plaintiff was against loss or damage by fire to naval stores "while located and contained as described herein and not elsewhere." The next clause is definite and specific, for it limits the risk to "rosin, turpentine, etc., in barrels, while waiting shipment, in or on the warehouses and ∕ or sheds of Downing & Co.," and insured under policies issued by the plaintiff. "Within the limits above named," reinsurance was made "to the full extent of" the interests of the plaintiff, "as herein described." Finally a monthly report was required from the plaintiff of the total amount of insurance written by it on naval stores "in the above described warehouses, etc.," the latter part, as if to avoid all possible doubt, having been interlined by the plaintiff with a pen.

The risk did not cover all rosin belonging to Patterson, Downing & Co., nor all insured by the plaintiff, but was confined to rosin while stored in a certain manner and in a certain place. No rosin was covered unless it was "in or on the warehouses and ∕ or sheds of Downing & Co." These words in an application for insurance would ordinarily constitute a warranty that the property insured was thus situated and would prevent a recovery for the loss of any situated elsewhere. (*Bryce* v. *Lorillard Fire Insurance Company*, 55 N. Y. 240.) While the original policy embraced "all risks by railroads and ∕ or other inland conveyances and in warehouses, *yards* or elsewhere," the policy of reinsurance makes no mention of property in yards or in any place except warehouses and sheds. Therefore, unless the rosin destroyed was in or on the warehouses or sheds, it was not covered. The

referee found that it was not so located, but he also found that it was deposited in the open yard, so that the unanimous affirmance does not make the former finding conclusive, because the latter presents a question of law as to the meaning of the policy. Clearly the property was in neither of the places named in the policy of reinsurance, for it was in a large uncovered inclosure surrounding the warehouses and sheds and known as the yards. While the meaning of the word "in," as used in the reinsurance contract, is free from doubt, that of the word "on" is not clear. The function which the parties intended it to perform is uncertain. It does not appear in the sentence requiring a monthly report of insurance written by the plaintiff, for that is limited to the naval stores "in the above described warehouses, etc." This is significant, for both policies were open, on a fluctuating stock, and the quantity on hand, not exceeding $80,000 in value, was the measure of the defendant's liability. Why should the report be limited to stock in the warehouses, if the defendant was also liable for stock in the yards?

The parties may have meant that the barrels of rosin were to be on the inside floors or the outside platforms of the buildings, or that they were to be near or about the buildings. Obviously, they could not have meant that the bulky barrels, weighing 282 pounds each, should be placed on top of the warehouses or sheds. "On" does not always mean on top of, or resting upon, for sometimes, but less frequently, it means contiguous to, as when we say "a house on Main street," or "a man stood on either side of the house." The parties may have used the words in this sense, although it would apply as well to turpentine and permit it to be stored out of doors where it would be subject to damage from the elements. The plaintiff may have understood it in one way and the defendant in another, without doing violence to reason. In other words, an ambiguity has arisen as to the meaning of the policy which the courts must settle.

As the terms of insurance, including the description of the risk, were wholly prepared by the plaintiff, an insurer of wide

experience, for it has done business since 1720, and the defendant had no information upon the subject, except the typewritten slip furnished by the plaintiff, we think that the responsibility for the ambiguity should be borne by the party who caused it. (*Janneck* v. *Metropolitan Life Insurance Company*, 162 N. Y. 574; *Herrman* v. *Merchants' Insurance Company*, 81 N. Y. 184; *Kratzenstein* v. *Western Assurance Company*, *supra*.) While the defendant adopted the plaintiff's words when he pasted the slip in the policy, he could not do otherwise if he made any contract whatever. They were still the words of the plaintiff, the doubt caused thereby was caused by the plaintiff, and the defendant should not be required to father its offspring. The principle of resolving doubts in a unilateral contract by throwing the burden upon the one who caused them, applies with the same force to this case, under its peculiar circumstances, as to the cases cited and, as we think, furnishes the proper solution of the controversy.

The judgment should be affirmed, with costs.

Haight, J. (dissenting). I think the policy in question should receive a broader construction than that given by the Appellate Division. · The rosin and turpentine which have been destroyed by fire were prior thereto stored with Downing & Co., at Brunswick, Ga., the turpentine in their shed or warehouse and the rosin in their open yard adjacent thereto. The plaintiff corporation had insured this property, so stored, against loss or damage by fire while awaiting shipment. The defendant had issued the policy in question reinsuring the plaintiff for all loss or damage by fire to the rosin and turpentine while awaiting shipment " in or on the warehouses and ╱ or sheds of Downing & Co., at Brunswick, Georgia, and insured under policies issued by The London Assurance Corporation, marine branch." Both the rosin and turpentine were damaged by fire, and the plaintiff, under its policy, has been compelled to pay the amount of loss so incurred by the owners. The Appellate Division, however, has held that the

defendant is only liable for the loss occurring to the turpentine which was stored in the shed and not for the rosin which was stored in the yard, holding that the defendant reinsured only such property as was stored within the warehouse or shed. This, to my mind, is not in accord with the evident intention of the parties to the contract. By referring to the policy we find that it was issued to *reinsure* the London Assurance Corporation. To reinsure means to insure that which was before insured, or that which the plaintiff had insured. The policy further provides that "it is the true intent and meaning of this policy to fully indemnify the London Assurance Corporation for each and every loss by fire within the limits above named to the full extent of *its* interest as herein described." Here we have an express declaration as to the meaning of the parties, which is to fully indemnify the plaintiff for its entire loss by fire to the full extent of "its interest;" in other words, to the full extent of its loss. And, again, we have the provision that "this policy is subject to the same fire risks, conditions, interpretations, valuations, endorsements and assignments as are or may be assumed or adopted by the London Assurance Corporation and loss, if any, payable at the same time and in the same manner as they pay." This provision, in effect, adopts the plaintiff's policy as to risks, conditions, interpretations, etc., and makes the loss payable at the same time and in the same manner. It is contended, however, that notwithstanding these express provisions of the policy the property insured was limited to that which was inside of the warehouse or shed, under the provision of the policy first quoted. It will be observed that the language used is "in or on the warehouses or sheds." The words "or on" are treated as surplusage or meaningless and the word "in" is relied upon as limiting the property to that which was within the warehouse or shed. This construction might properly have been adopted had it not been for the other provisions of the policy, to which I have alluded, indicating an intention to reinsure the plaintiff and assume its liability

upon the property which was subsequently destroyed. No one contends that the word " on " in this connection means upon the warehouses or sheds, neither of which appears to have been constructed for the purpose of receiving property of this character upon its roof. The word " on," however, is often used as expressing the relation of nearness in place; contiguous to or abutting on, as for instance : " As their navy on your shores," " on each side," " the town on the lake," " the store on Main street." (Worcester's Dict.)

The yard in which the rosin was stored surrounds the warehouse and is abutting on or contiguous thereto, and I think the words " or on " should be construed as abutting or contiguous to the warehouse or shed, for by such construction the provisions of the entire policy become harmonious and evidently in accord with the intention of the parties thereto.

The judgment should be reversed and a new trial ordered.

Parker, Ch. J., Bartlett, Martin and Werner, JJ., concur with Vann, J. ; Cullen, J., concurs with Haight, J.

Judgment affirmed.