KIRK et al. v. HOME INS. CO.

(Supreme Court, Appellate Division, Third Department. March 2, 1904.)

1. MARINE INSURANCE—DREDGE—DEVIATION—CONSTRUCTION OF POLICY.

Under a marine policy insuring a dredge, and providing: "Warranted confined to the use and navigation of the waters of New Haven Harbor and adjacent inland waters. * * * Any deviation beyond the limits named in this policy shall void this policy"—the use of the dredge in an inland water adjacent to Bridgeport Harbor, 17 miles from New Haven Harbor, is a deviation.

Submitted controversy by William B. Kirk, John Dunfee, Ambrose C. Driscoll, and John A. Seely, composing the copartnership of Kirk, Driscoll & Co., against the Home Insurance Company. Judgment for defendant.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

Hun & Parker (Lewis R. Parker, of counsel), for plaintiffs.
William Ives Washburn, for defendant.

PARKER, P. J. The plaintiffs seek to recover upon a policy of insurance issued by the defendant, which insured them to an amount not exceeding $7,500 against the usual marine perils to their steam dredge Driscoll for one year from April 7, 1902. On September 8, 1902, the dredge was sunk in Ceder creek, which is a part of, or an adjunct to, the harbor of Bridgeport, in the state of Connecticut. The policy contained the following provision:

"Warranted confined to the use of navigation of the waters of New Haven Harbor and adjacent inland waters, with privilege to lay up and make additions, alterations and repairs, and to go in dry dock. Losses or averages of each voyage or trip to be adjusted separately.

"Any deviation beyond the limits named in this policy shall void this policy, but upon the return of said vessel within the limits named herein, this policy shall reattach and continue in full force and effect, but never beyond the date hereinbefore set for the termination of this policy, and provided only, no disaster has occurred during said deviation."

The single question presented to us is whether Ceder creek, the place where the dredge sank, is within the limits specified by the phrase, "waters of New Haven Harbor and adjacent inland waters."

The submission concedes that if Ceder creek, which is confessedly an inland water, may, within the purpose and intent of such phrase, be deemed as adjacent to New Haven Harbor, then the plaintiffs are entitled to recover; otherwise not. Bridgeport Harbor is some 17 miles, and Ceder creek some 18 miles, west of New Haven Harbor. Evidently the purpose of such provision was to limit the locality where the dredge was to be used. We may assume that some waters are more perilous than others, and therefore the applicants were required to state where the dredge was to be used, and the contract was made with reference to those waters. The waters of New Haven Harbor are clearly specified. There is no ambiguity about that phrase; but what was intended by the further phrase "and adjacent inland waters"? The Sound is concededly not "inland waters," and so the dredge might not be used there, although it is adjacent to New Haven Harbor. Evidently the purpose of such limitation was to confine the use of the dredge to New Haven Harbor and waters adjacent to that harbor other than the Sound. If, under the phrase "adjacent inland waters," we may include Bridgeport Harbor, 17 miles away, I see no reason why New London Harbor, or even New York Harbor, may not be included, as there seems to be no element in the case to show why 50 miles may not be considered adjacent, as well as 17 miles. The effect of such a construction would be to extend the limitation to any harbor and adjoining inland waters on the Connecticut coast; and, if such was the purpose, it would have been better expressed in that language. Clearly, such a sweeping effect was not intended by the phrase used.

The specifying of the one harbor seems to me to repel the idea that any other harbor was intended. Bridgeport is a harbor as prominent and important as is New Haven Harbor, and it has several inland waters leading into and adjoining it. If the purpose of the contract was to insure the dredge while being used in those waters, as well as while being used in New Haven Harbor, both harbors would have been named. It is incredible that a harbor so distinct and prominent as Bridgeport would have intentionally been described as an "inland water adjacent to New Haven Harbor." As suggested above, any other harbor on the Connecticut coast, where the dredge might happen to sink, might as well be claimed to be included within the phrase used, and thus the limitation to New Haven Harbor was practically meaningless.

It is urged that the only inland water adjoining or connected with New Haven Harbor is the Quinnipiack river, a water in which it could not be expected the dredge would be used, and that, therefore, the word "adjacent" must necessarily apply to inland waters some distance from, and not at all connected with, that harbor; and hence, as the language used must be construed strictly against the insurer, other harbors and other inland waters are not excluded from the terms of the policy. But we must, in reason, assume that the plaintiffs made the statement as to where the dredge was to be used; and it is as probable that the phrase in question was their language as that it was the defendant's. Under such circumstances, the rule that the policy must be construed most strictly against the

insurer does not apply (London Assurance Corp. v. Thompson, 170 N. Y., 94, 100–103, 62 N. E. 1066), and a reasonable interpretation of the words used in the light of the surrounding circumstances should control us. If the language was the plaintiffs', it does not at all follow that the defendant knew what the nature of the Quinnipiack river was, or whether or not there were any inland waters connected with New Haven Harbor. It was informed that the insured desired to use the dredge in that harbor, and was content with language that limited its use to that harbor, and such waters as, in the ordinary meaning of the word, were adjacent thereto. It had no reason to expect that other harbors were intended. It had every reason to assume that they were not.

I am of the opinion that the insurance did not cover the loss at the place where the dredge was sunk, and that the defendant is entitled to judgment, with costs. All concur.