CANTON INS. OFFICE, Limited, et al. v. INDEPENDENT TRANSP. CO. et al.

(Circuit Court of Appeals, Ninth Circuit.  October 13, 1914.)

No. 2382.

**1. INSURANCE (§ 146\*)—CONSTRUCTION OF CONTRACT.**

A court should give to a written contract that reasonable construction which it is to be assumed intelligent business men would give it, and such rule applies to contracts of insurance equally with other contracts.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 292, 294–298; Dec. Dig. § 146.\*]

**2. INSURANCE (§ 313\*)—MARINE POLICIES—AVOIDANCE FOR BREACH OF WARRANTY.**

Time policies of insurance on a vessel contained a provision written on the margin: "Vessel warranted employed in the general passenger and freighting business on Puget Sound within a radius of thirty miles from Seattle." Operation of the vessel was discontinued, and four months afterward, while moored in a river with no watchman on board, she filled and sank from some unknown cause. *Held*, that such warranty, given a reasonable construction, was that she would continue in the employment specified during the term of the policies, and that, when she departed from it for such length of time and was taken from the Sound, they became void.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 710; Dec. Dig. § 313.\*]

**3. INSURANCE (§ 146\*)—CONSTRUCTION OF CONTRACT—USAGE OF THE BUSINESS.**

While an insurance contract must be construed with reference to the generally established usages and customs of the business, the words used are to be understood in their ordinary and popular sense, unless they have a different meaning by some definite usage brought home to the knowledge of the parties to be affected or so general and well established that their knowledge of it may be presumed.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 292, 294–298; Dec. Dig. § 146.\*]

Appeal from the District Court of the United States for the Northern Division of the Western District of Washington; Jeremiah Neterer, Judge.

Suit in admiralty by the Independent Transportation Company and another against the Canton Insurance Office, Limited, and the Yank-Tske Insurance Association. Decree for libelant, and respondents appeal. Reversed.

William H. Gorham, of Seattle, Wash., for appellants.

Kerr & McCord, of Seattle, Wash., and Ira A. Campbell, of San Francisco, Cal., for appellees.

Before GILBERT and ROSS, Circuit Judges, and WOLVERTON, District Judge.

GILBERT, Circuit Judge. On July 3, 1907, the appellants issued to the Independent Transportation Company polices of insurance covering its steamer Vashon, then engaged in the summer trade between the city of Seattle and Alki Point, a summer resort on Puget Sound, about six miles from Seattle. The policies covered the vessel from July

3, 1907, until July 3, 1908. Each of the policies insured the owner against perils of the sea "and all other losses and misfortunes that shall come to the Vashon or damage to the said vessel insured or any part thereof, to which insurers are liable by the rules of insurance in San Francisco." In August, 1907, the Vashon discontinued her run to Alki Point, and until December was moored at the King street dock in Seattle. About December 1, 1907, she was removed from that dock and moored in the Duwamish river, a tributary of Elliott Bay. On December 15, 1907, the Vashon sank at her moorings. To the libels brought by the insured against the appellants, to recover on the policies, the appellants answered, denying liability thereon, and alleging a violation of the express warranty therein contained that during the term of the policies the vessel would be and remain employed in the general freight and passenger business on Puget Sound, within a radius of 30 miles from Seattle. The trial court construed the warranty otherwise, and ruled against the appellants, and entered a decree to enforce their liability upon the policies.

[1] A court should give to a written contract that reasonable construction which it is to be assumed intelligent business men would give it.

"Contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms" which the parties have "used; and, if they are clear and unambiguous, their terms are to be" taken and "understood in their plain, ordinary, and popular sense." Imperial Fire Ins. Co. v. Coos County, 151 U. S. 452–463, 14 Sup. Ct. 379, 38 L. Ed. 231.

"Rules established for the construction of written instruments apply to contracts of insurance equally with other contracts." Liverpool, etc., Ins. Co. v. Kearney, 180 U. S. 132–135, 21 Sup. Ct. 326, 328 (45 L. Ed. 460).

[2] We find written on the margin of the policies involved in this case the following:

"Vessel warranted employed in the general passenger and freighting business on Puget Sound, within a radius of thirty miles from Seattle. Warranted no lime under deck."

These warranties cannot reasonably be construed to be other than what their terms plainly import: First, a warranty that during the term of the policy the vessel is to be navigated in the general passenger and freighting business, and on Puget Sound within a radius of 30 miles from Seattle; second, that during that time no lime shall be carried under deck. They are expressed in no unusual form. They are similar in phraseology to other warranties in marine insurance policies, examples of which are found on the margin of policies which were introduced in evidence in this case, such as "warranted free from capture, seizure, and detention," etc. "Warranted confined to Pacific Coast trade not north of Comox nor south of Valparaiso." All such warranties are inserted for the purpose of limiting and defining the risk. Before insuring a vessel, it is important to the insurance company to know in what business the vessel is to be engaged, and upon what waters she is to be navigated. 'Said Lord Watson, in Birrell v. Dryer, 9 App. Cas. 345:

"To define the limits within which the vessel is to be navigated, for the purpose of a time policy, is in principle precisely the same thing as to describe the voyage for which a vessel is insured under an ordinary policy."

But it is urged that the words of the warranty do not necessarily mean what they purport to say, but that another meaning may be found in them, and the rule is invoked that, where a provision of a policy of insurance is ambiguous, it is to be construed in the sense most favorable to the assured, since the instrument is prepared by the insurer, and it is contended that the warranty first above quoted may be construed to mean that the vessel, at the particular time of taking out the policy, was warranted to be engaged in the passenger and freighting business on the waters of Puget Sound within a radius of 30 miles from Seattle, or that she had prior thereto been so engaged. To this it is to be said that such a warranty would be of no value to either party to the insurance contract. It would not in any way affect the risk, and it is not conceivable that such a representation would have been embodied in the form of warranty. If it had been the intention to specify the business in which the steamer was or had been engaged, the warranty would have been that the vessel "is now carrying passengers between Seattle and Alki Point." The construction contended for by the appellee would be strained, unnatural, and unreasonable. By a like process of reasoning, most, if not all, warranties could be explained away. Thus the warranty "no lime under deck" might be said to mean that there never had been lime below the deck, and the warranty "no St. Lawrence," construed in Birrell v. Dryer, above cited, might be construed to mean that the vessel was not then navigating or had not navigated the waters of the St. Lawrence, and the warranty construed in Kirk v. Home Ins. Co., 92 App. Div. 26, 86 N. Y. Supp. 980, "warranted confined to the use and navigation of the waters of New Haven Harbor, and adjacent inland waters," could be explained to mean only that the vessel was warranted to have been theretofore confined to the use of those waters. In Birrell v. Dryer, the policy contained the words "warranted no St. Lawrence between the 1st of October and 1st of April." It was held that there was no ambiguity or uncertainty in these words sufficient to prevent the application of the ordinary rules of construction, and that, according to those rules, the whole St. Lawrence navigation, both gulf and river, was within the fair and natural meaning of those negative words. Lord Watson, discussing the contention that the words "no St. Lawrence" were ambiguous and must be applied to the river only, because underwriters are the proferentes with regard to a policy of insurance, said:

"That the underwriters may be rightly held to be the proferentes with regard to many conditions in a policy, I do not doubt; whether they ought to be so held depends, in each case, upon the character and substance of the condition. In the present case there are many considerations which lead to the inference that the clause in question is not one constructed and inserted by the appellants alone, and for their own protection merely. It was, in point of fact, inserted in the contract by the agent of the respondents; and it is in form a warranty by them that their vessel will not be navigated in certain waters, a matter which it was entirely within their power to regulate. These considerations point rather to the respondents themselves being the proferentes; but I think the substance of the warranty must be looked to; and that in substance its authorship is attributable to both parties alike. The main object of the clause is to define the limits within which the vessel is to be kept whilst she is navigated under the policy; and that appears to me to be as much the concern of the shipowner as of the underwriters."

In Kirk v. Home Ins. Co., 92 App. Div. 26, 86 N. Y. Supp. 980, the policy contained the provision "warranted confined to the use and navigation of the waters of New Haven Harbor and adjacent inland waters." The loss occurred while the dredge so insured was in inland water adjacent to Bridgeport Harbor, 17 miles from New Haven Harbor. The court held that thereby the policy was avoided. Answering the objection that the language of the policy must be construed strictly against the insurer, the court said:

"But we must, in reason, assume that the plaintiffs made the statement as to where the dredge was to be used; and it is as probable that the phrase in question was their language as that it was the defendant's. Under such circumstances, the rule that the policy must be construed most strictly against the insurer does not apply"—citing London Assurance Corp. v. Thompson, 170 N. Y. 94, 62 N. E. 1066.

We are of the opinion that there was breach of the warranty in two particulars: First, in that the insured vessel was taken out of the permitted waters, the waters of Puget Sound; second, in that her employment of carrying freight or passengers came to an end when she was anchored for the winter in the Duwamish river. We cannot yield to the appellee's contention that the waters of a river which flow into Puget Sound are waters of Puget Sound. In Hastorf v. Greenwich Ins. Co. (D. C.) 132 Fed. 122, the policy insuring a scow contained the following provision:

"Warranted by the assured to be employed exclusively in the freighting business, and to navigate only the waters of the bay and harbor of New York, the North and East rivers, and inland waters of New Jersey."

It was held that "North river" could not be extended by construction to include tributaries of the Hudson in the state of New York, and that there could be no recovery under the policy for injury to the scow received while she was lying at a dock in Rondout creek, 2½ miles from the Hudson. Said the court:

"There can be no doubt that Rondout creek is a different body of water from the North, or Hudson, river, and that the language used does not in terms cover the locality in which this accident happened."

The appellee cites Mannheim Ins. Co. v. Charles Clarke Co. (Tex. Civ. App.) 157 S. W. 291. The policy in that case contained this provision:

"Limited to the use of the Gulf waters of the United States between Key West, Fla., and the mouth of the Rio Grande del Norte, both inclusive."

The boat sank in the Atchafalaya, about 18 miles from its mouth. The question was whether the waters at that place were gulf waters, within the meaning of the policy. The court decided that they were, but in so deciding was influenced by the further provision of the policy which insured "against the adventures and perils of the harbors, bays, sounds, seas, rivers and other waters as above named."

The Vashon was left moored in the stream, with no watchman on board, and was placed in the charge of a man who lived in a boathouse some 200 feet away. He, or one of his men, according to his affidavit, visited the vessel every day. Without any known cause, the vessel filled with water and sank at her moorings. There was no stress of weather

or collision. The testimony of one witness tended to show that the water entered through some small holes on the inside lining of the hull, the plugs in the holes having been in some way removed, but this was contradicted by others. The risk to the vessel thus moored in a stream, with no one on board, was a widely different risk from that which the insurer undertook when it insured the vessel as employed in navigation and with her crew on board. We do not say that a vessel insured as being employed in navigation may not suspend navigation for a time, or lay up at a dock, but that is a different thing from going out of commission for a period of months.

In St. Nicholas Ins. Co. v. Merchants' Ins. Co., 11 Hun (N. Y.) 108, the policy insured a barge "while running on the Hudson and East rivers." It was held that these words did not restrict the insurance to the time while the barge was in motion, but that they were intended to describe the business of the barge, and to cover the time required for lading and unlading, as well as when the barge was in actual motion. The court said:

"The term 'running,' as it was used by the defendant, must have been designed to include all that ordinarily would be comprehended by the business of a vessel in active employment. It described the condition of a vessel commercially engaged; and it was used by way of contrasting the difference between vessels laid up and out of use and those making trips upon the water."

The vessel in the case at bar was left unguarded and practically abandoned. If she had remained in commission with her crew on board, the mishap which caused her loss could not have occurred. But it is a matter of indifference whether or not the risk was enhanced by the breach of the warranty, for a warranty must be strictly performed. 2 Arnould, Mar. Ins. (7th Ed.) § 632.

It is contended that the evidence shows that, by custom and usage, the form of policy issued, referred to as the "San Francisco Hull Time Policy," covers a vessel when laid up. Several insurance brokers and adjusters were called to testify as to the meaning of the warranty in the policy, and while they all agreed that the words thereof were in common usage and had been employed in "hundreds" of policies, and that their meaning was that the vessel was to be employed in the general passenger and freighting business on Puget Sound during the entire period of the policy contract, they differed in their answers to the question whether or not such a policy would remain in force while the vessel was laid up. Five testified that the San Francisco underwriters hold the vessel insured under that form of time policy while the vessel is laid up. Two testified to the contrary. Two others testified that the right to lay up would be recognized only after application had been made to the insurance company and approved by the company, and one testified that in his opinion the insurance would continue after the vessel laid up, provided the hazard was not increased. This testimony, even if admissible, was insufficient to establish a custom.

[3] Where a written contract is on its face susceptible of a construction that is reasonable, resort cannot be had to evidence of custom or usage to explain its language. Insurance Co. v. Wright, 1 Wall. 456, 17 L. Ed. 505. While the insurance contract must be construed with reference to the generally established usages and customs

of the business, usage cannot be resorted to for the purpose of varying or contradicting the written instrument. Hearne v. Marine Ins. Co., 20 Wall. 488, 22 L. Ed. 395. The insured has the right to rely on the ordinary meaning and scope of the terms used in the policy, unless a more restricted meaning is proved to have been recognized and established by general mercantile usage, or else expressly brought to his notice. Red Wing Mills v. Mercantile Mut. Ins. Co. (D. C.) 19 Fed. 115.

In Odiorne v. New England Marine Ins. Co., 101 Mass. 551, 3 Am. Rep. 401, the court said:

"The usage which was offered to be proved is also inadmissible. Seccomb v. Provincial Insurance Co., 10 Allen [Mass.] 305. It is merely a usage among underwriters in Boston to construe a clause of the policy in a particular way. The clause in question is: 'Prohibited from the river and Gulf of St. Lawrence, Northumberland Straits, or Cape Breton, and Black Sea, between October 1st and May 1st.' There is nothing in this language so technical or peculiar, or having such application to a particular trade or branch of business, or a particular method of managing business, as to require the evidence of usage to explain it."

In that case the court held that the prohibition in the policy was in effect a warranty, and that the policy was avoided when the vessel sailed from St. Johns, Newfoundland, for Cape Breton.

In Cobb v. Lime Rock Fire & Marine Ins. Co., 58 Me. 326, it was held that the words "prohibited from the River and Gulf of St. Lawrence between September 1st and May 1st" constituted a warranty that the vessel should not enter those waters within the time mentioned. The court said:

"The words used are to be understood in their ordinary and popular sense, unless, by some known usage of trade, they have a different meaning. * * * The usage must be definite and brought home to the knowledge of the parties to be affected, or so general and well established that there must be ground to presume the parties had knowledge of it, or that they were bound to be informed of it."

The decree is reversed, and the cause remanded, with instructions to dismiss the libel as to the appellants herein.