(Decided 30th June, 1869.)

---

THE PRESIDENT AND DIRECTORS OF THE MARYLAND FIRE INSURANCE COMPANY *vs.* JAMES WHITEFORD, and others.

*Policy of Insurance against Fire—Construction of the words " Permission given to keep one barrel of Benzine or Turpentine in tin cans, and one half-barrel of Varnish for use, in No. 9 Commerce street."*

The plaintiffs procured from the defendant a policy of insurance, by the terms of which they were not to keep in the buildings occupied by them, any articles, goods, or merchandise, denominated hazardous, or extra

Maryland Fire Insurance Company *vs.* Whiteford, *et al.*

or specially hazardous in the conditions of insurance annexed to the policy, except as provided in the policy or thereafter agreed upon by the insurer in writing upon the policy. Subsequently an endorsement was made on the policy in the following language: "Permission given to keep one barrel of benzine or turpentine in tin cans, and one half-barrel of varnish for use, in No. 9 Commerce street." The plaintiffs were engaged in the business of rectifying and selling liquors, and their business required the use of benzine for certain purposes. The benzine was always brought in a barrel, rolled into the warehouse, and transferred by means of a syphon into a single can, capable of holding the contents of one barrel. On one occasion while this transfer was being made, an explosion took place which set fire to and destroyed the warehouse. In an action on the policy of insurance, HELD:

1st. That a fair and reasonable construction must be given to the endorsement so far as the intention of the parties can be deduced from the terms employed.

2d. That said endorsement was not a warranty, but a *permission* given by the insurer and to be substantially complied with on the part of the insured, to enable them to claim the benefit of the privilege.

3d. That there was a *substantial* compliance with the provisions of the endorsement, in keeping the quantity specified in *one* tin can.

4th. That under the permission to keep the benzine for use to the extent specified, the insured were not restricted in their right to procure it in any usual way; and the purchase of it from merchants or other persons having it, and its introduction and transfer from the wooden barrel to the tin can, were allowed to the insured by every reasonable intendment.

5th. That the temporary introduction into the barrel, was not the *keeping of it*, in the wooden barrel, and cannot in any just sense be considered violative of the terms of the endorsement.

6th. That although the fire may have been attributable to the want of ordinary care, or the fault and negligence of the insured or their employés or agents, yet in the absence of fraud or design their right of recovery was not barred thereby.

7th. That what may have been the *habit* of the insured in regard to the *keeping* of the benzine, could neither under the terms of the original policy (which provided that the keeping of any of the prohibited articles, or the storing thereof on the insured premises, only operated to make void the policy *so long as they were so used,*) or the endorsement, have any application, unless *at the time of the occurrence of the fire*, the barrel of benzine was actually *stored* or *kept* upon the premises in the *wooden barrel.*

Maryland Fire Insurance Company *vs.* Whiteford, *et al.*

APPEAL from the Superior Court of Baltimore City.

The questions in this cause arise upon a policy of insurance, issued by the appellant (the defendant below) to the appellees. The insured were engaged in the business of selling and rectifying liquors at No. 9 Commerce street, in the city of Baltimore. Their policy contained the usual clauses in regard to hazardous and extra and especially hazardous articles, including in the first named class, paints, turpentine and varnish, in packages, and in the last named class, " petroleum, carbon and coal oils of every · description." From the commencement of the war, the difficulty with which turpentine could be procured, and the extravagant prices it commanded, had caused benzine, which is obtained from petroleum by distillation, to be generally used in the manufacture of paints, and it was kept on hand by liquor merchants and rectifiers, not only to be used in the preparation of the paints which their business required, but on account of its erasive properties, which made it necessary for the removal of brands and stamps from barrels, in obedience to the internal revenue laws. The plaintiffs, on the 24th of November, 1865, obtained permission, endorsed on the policy, " *to keep one barrel of benzine or turpentine, in tin cans, and one half-barrel of varnish, for use in No. 9 Commerce street.*"

It was developed by the proof, that the business of the appellees required the yearly consumption of three or four barrels of benzine, and that they had used that quantity from the year 1861, four years before the endorsement in question. Their custom was to purchase a barrel at a time, roll it into their warehouse, elevate it, insert a syphon into the bung-hole, and thus transfer the liquid to a large tin can, kept for the purpose, which contained from forty-five to fifty gallons—barrels generally averaging from thirty-nine to forty-four gallons. They were not in the habit of allowing the barrels to remain for any length of time on their premises before emptying them, and on the

occasion in controversy, the barrel was not three minutes in the store before the process of emptying began. While that process was going on, the afternoon being damp, and benzine vaporizing rapidly in moist weather, one of the workmen, looking for a leak, approached with a lamp within six feet of the barrel, when an explosion took place, and the premises were set on fire and consumed with their contents.

The verdict being in favor of the plaintiffs the defendant took this appeal.

The cause was argued before BARTOL, C. J., STEWART, GRASON, MILLER and ALVEY, J.

*William A. Fisher* and *I. Nevett Steele,* for the appellant.

The stipulation in reference to the manner in which the benzine was to be kept, was a warranty, and was, as such, a part of the contract at the time the same was renewed in 1866. *Angell on Fire and Life Ins., secs.* 140, 142, 143, 147, 147 *a, and* 148 ; *Westfall vs. Hudson R. Ins. Co.,* 12 *New York Rep.,* 294 ; *Wall vs. E. River Ins. Co.,* 7 *New York Rep.,* 372 ; *Asgood vs. Lewis,* 2 *H. & G.,* 521 ; 1 *Phillips on Insurance, sec.* 875.

The warranty is that the article shall be kept *only* to the extent of the contents of a barrel, and *only in tin cans. Wall vs. E. River Ins. Co.,* 7 *New York,* 373 ; *Stokes vs. Cox,* 1 *Hurlstone & Norman,* 342.

In all cases a warranty must be *exactly* complied with, and if there has been any breach, the policy is void. Cases before cited ; *Augusta Ins. Co. vs. Abbott,* 12 *Md.,* 348 ; *Angell on Fire and Life Ins., sec.* 147 *a, and sec.* 143, *note* 2 ; *Newcastle Fire Ins. Co. vs. Macmorran,* 3 *Dow,* 255 ; 3 *Kent's Comm's,* 373 ; *DeHahn vs. Hartley,* 1 *Term Rep.,* 343 ; *Worsley vs. Wood,* 6 *Term,* 718 *and* 719.

The appellant cannot be deprived of the benefit of the warranty for division into various packages, even if the

Court should think that the risk was not increased. *Angell on Fire and Life Ins.*, sec. 143, note 2; *Newcastle Fire Ins. Co. vs. Macmorran*, 3 *Dow*, 255.

A fair construction of the terms of the warranty, especially in view of the great risk incurred in emptying the barrel upon the premises, would require that the benzine should be bought and taken into the premises in "tin cans," such as those in which the article was then commonly sold in the market, and that it should not be on the premises in wood at all; and it is apparent that the object of the stipulation was to afford at all times the benefit of the protection given by the tin cans. If it were there at all in the wooden barrel, it was being kept there, and the Court will not enter into the question of duration. *Glenn vs. Lewis*, 8 *Exchequer*, 607.

No case can be found which has gone beyond holding that general language shall not extend to the prevention of necessary acts in relation to the subject of insurance, such as repairs; but the decanting on the premises was not a necessary act, and a loss having occurred from gross negligence in connection with it, the company is discharged. *Jolly vs. The Baltimore Equitable Society, &c.*, 1 *H. & G.*, 300–301; 3 *Kent's Comm's*, 374.

*S. Teackle Wallis* and *Wm. Schley*, for the appellees.

In so far as the endorsement on the policy can be regarded as qualifying and restricting the right thus belonging to the appellees under the policy itself (which qualification and restrictions will be narrowly construed— certainly not enlarged by construction), it affects only the *keeping* of benzine on the premises, and not its introduction or presence there temporarily, and for a temporary purpose, in a different package or vessel from those specified in the endorsement. There was, therefore, nothing in the endorsement (even if it be taken to involve a warranty,) which prevented the appellees from introducing benzine in

wood into their warehouse, in order to transfer it to tin, or from making such transfer within their warehouse, in the mode described in the testimony. *Angell on Fire and Life Ins.*, secs. 155, 156, 157, 164–169; *Dobson vs. Sotheby* 1 *Moody & Malkin*, 90 (22 *Eng. Com. Law*, 260); *Rafferty vs. N. Brunswick Fire Ins. Co.*, 3 *Harrison*, 480; *N. Y. Equitable Co. vs. Langdon*, 6 *Wendell*, 623; *Moore vs. Protection Ins. Co.*, 29 *Maine*, 97; *Vogel vs. People's Mut. F. Ins. Co.*, 9 *Gray*, 23; *Mayor of N. York vs. Hamilton Ins. Co.*, 10 *Bosworth*, 537; *Citizens' Ins. Co. vs. McLaughlin*, 53 *Pa.*, 485; *Phœnix Ins. Co. vs. Taylor*, 5 *Minnesota*, 492; *O'Neill vs. Buffalo Ins. Co.*, 3 *Comstock*, 122; *Wash. Fire Ins. Co. vs. Davison & Symington*, 30 *Md.*, 91.

STEWART, J., delivered the opinion of the Court.

The party insured in this case, according to the terms of their policy, were not to keep in the buildings occupied by them, any articles, goods, or merchandise denominated hazardous, or extra or specially hazardous, in the conditions of insurance annexed to the policy, except as provided in the policy, or thereafter agreed to by the insurers in writing upon the policy.

The original contract between the parties was modified by the endorsement upon the policy of the 24th November, 1865, specially referring to the article described as " benzine."

This endorsement is in the following language: " Permission given to keep one barrel of benzine or turpentine in tin cans, and one half-barrel of varnish, for use in No. 9 Commerce street."

As we comprehend the import of this endorsement, the quantity mentioned of benzine was authorized to be used on the premises, and unquestionably the insured had the permission to keep one barrel of benzine in tin cans upon the property, without incurring risk of forfeiture of any of their rights under the policy of insurance.

A fair and reasonable construction must be given to the endorsement, so far as the intention of the parties can be deduced from the terms employed.

Policies of insurance, like other contracts, should have such practical and ordinary interpretation, as to carry into effect the obvious understanding of the parties concerned in them. This endorsement is not a *warranty*, but a *permission* given by the insurers, and to be *substantially* complied with on the part of the insured, to enable them to claim the benefit of the privilege.

Judging of this endorsement by the rules of ordinary construction, we think there can be no doubt of the real meaning and purpose of the parties to allow the quantity of one barrel of benzine to be kept for use on the premises, but for better security against fire, from the dangerous character of the article, the benzine was required to be kept, not in the wooden barrel, but in a suitable metallic vessel, either in tin cans, or in one tin can, equally safe and proper, and better calculated than the wooden vessel to prevent accident from its use. It was proven at the trial that benzine is the product from the distillation of coal oil or petroleum, the most volatile of which is called gasoline; that benzine is inflammable and explosive when in contact with the atmosphere, and vaporizes from agitation.

According to the testimony of those familiar with its character and properties, the keeping of benzine in one tin can, large enough to hold the quantity of a barrel, or less amount, is quite as safe, if not more so, than to keep it in tin cans.

There was, therefore, a *substantial* compliance with the provisions of the endorsement, in keeping the quantity specified in one tin can.

If there could be any rational doubt of this being the purport of the language, apposite analogy will fortify the construction we put upon the endorsement.

A representation is substantially complied with by the adoption of precautions which, if not those exactly stated in the application, may be such as tend to accomplish the same purpose, and considered equally efficacious; for example, when it is stated that ashes are taken up in *iron* hods, it would be a substantial compliance if *brass* or *copper* were substituted.

So when it is represented that casks of water, with buckets, are kept in each story, if a reservoir be placed above, with pipes to convey water to each story, and found by skilful and experienced persons, to be equally efficacious, it would be a substantial compliance. *Angell on Ins.*, 195; *referring to Houghton vs. Manufacturers' Ins. Co.*, 8 *Metcalf*, (*Mass.*,) 122.

Under the permission to keep the benzine for use, to the extent specified, the insured were not restricted in their right to procure it in any usual way; and the purchase or procuring of a barrel of it from merchants or other persons having it, and its introduction and transfer from the wooden barrel to the tin can, were allowed to the insured by every fair intendment.

If it had been the intention of the parties to make the permission more restrictive, proper terms to that effect should have been employed.

We perceive no valid objection to the prayer of the appellee, insisting that the insurers were not exempted from their liability for the loss in this instance, because of the introduction of benzine in the wooden barrel, its transfer, and the keeping of it on the premises of the insured as described in the prayer.

Certainly its temporary introduction in the barrel, was not the *keeping of it* in the wooden barrel, and cannot, in any just sense, be considered violative of the terms of the endorsement.

The concluding portion of the appellees' prayer is also unobjectionable; as the fire may have been attributable

to the want of ordinary care, or the fault and negligence of the appellees, or their employés, or agents, yet, in the absence of fraud or design, their right of recovery was not barred thereby.

Fires frequently occur from some negligence of the party assured or his agents, and the underwriters insure against this, unless they choose to stipulate otherwise, which has not been done in this case.

A loss by fire occasioned by the fault and negligence of the insured or his servants, and without fraud or design, is a loss within the policy, upon the general ground that the fire is the proximate cause of the loss; and, also, upon the ground that the express exceptions in policies against fire, leave this within the scope of the general terms of such policies. *Columbia Ins. Co. vs. Lawrence*, 10 *Peters*, 578; *Johnson vs. Berkshire Mutual Fire Ins. Co.*, 4 *Ala.*, 388.

There is no exception in the policy here, to exempt the appellants from their obligation to indemnify the insured, on account of such negligence.

But, on the contrary, the appellants promise to make good all loss or damage, within the limits of the insurance, as shall happen by fire, except any loss by fire, " by means of any invasion, insurrection, riot, or civil commotion, or of any military or usurped power."

These express exceptions, necessarily exclude others to be implied, extending to negligence or fault on the part of the insured; where there is fraud or design and not mere carelessness occasioning the fire, other considerations may fortify exemption and exonerate the company insuring.

No allegation of fraud is made or proved in this instance.

The prayers of the insurers could not be properly granted by the Court, insisting as they did by the first, that the habit of the insured, as they needed benzine, of bringing it upon the premises in a wooden barrel, and then trans-

ferring it to the can, as described in the prayer, did amount to keeping it on the premises in a wooden barrel, and constituted a breach of the permission, construing it as a warranty; and by the second prayer, upon the similar theory of a warranty, that because the appellee, the insured, usually kept benzine in a quantity, not exceeding one barrel, in one large tin can, and at the time of the fire were having the can filled from a barrel of benzine on the premises, they violated or committed a breach of the endorsement.

The mere fact of the barrel of benzine being on the premises for the purposes described, could not, upon any fair construction of the terms of the contract, amount to keeping benzine in a wooden barrel upon the premises.

Nor could its being kept to the amount of a barrel, in one tin can, be reckoned other than a substantial compliance with the endorsement upon the policy, and such as the parties, it may be presumed, would have expressly agreed to at the time of the endorsement, if required.

Under the terms of the original policy, the keeping of any of the prohibited articles, or the storing thereof on the insured premises only operated to make void the policy, *so long as they were so used*, but the policy was not absolutely forfeited by the storing or keeping of the forbidden article.

What may have been the *habits* of the insured in regard to the *keeping* of the benzine, could, neither under the terms of the original policy or the endorsement have any application, unless *at the time of the occurrence of the fire*, the barrel of benzine was actually *stored* or *kept* upon the premises in the *wooden barrel*.

The hypothesis of facts assumed in the prayers of the insurers, as well as their theory of construction of the contract between the parties, was liable to objection, and the Court below very correctly refused to grant them.

*Judgment affirmed.*

(Decided 30th June, 1869.)