# VIZZINI *v.* INSURANCE COMPANY OF NORTH AMERICA

[No. 242, September Term, 1970.]

*Decided February 3, 1971.*

The cause was argued before HAMMOND, C. J., and BARNES, SINGLEY, SMITH and DIGGES, JJ.

*W. Hamilton Whiteford* for appellant.

*Philip O. Roach* for appellee.

SINGLEY, J., delivered the opinion of the Court.

Mr. Vizzini's yacht, "Sea Chanty," foundered in the Delaware River on the night of 7 September 1967. He brought suit in the Superior Court of Baltimore City against his insurer, Insurance Company of North America (the Insurer). When the jury returned a verdict of $25,000, the full amount of loss payable under the policy, plus interest accruing from the day of the denial of liability, the trial court, Shirley Jones, J., entered a judgment for the Insurer for costs, after granting the Insurer's motion for judgment non obstante veredicto. Vizzini appealed from this judgment.

The facts which underlay the controversy can be briefly told. The Insurer, under a policy effective for one year from 21 November 1966, insured "Sea Chanty," her hull and machinery, in an amount of $25,000 against all risks for physical loss or damage. The policy contained the so-called "Chesapeake Bay Warranty":

> "Warranted confined to the waters of the Chesapeake Bay and its tributaries not east of a line drawn between Cape Charles and Cape Henry as well as:
> a. the Intracoastal Waterway but not south of Elizabeth City, North Carolina, via the Dismal Swamp Canal;
> b. the Intracoastal Waterway but not south of Coinjack, North Carolina, via the Virginia Cut;
> c. the Chesapeake and Delaware Canal but not east of Chesapeake City, Maryland, except privilege is granted to transit the entire Chesapeake and Delaware Canal and navigate the Delaware

River not below Reedy Island only for the purpose of storage and/or repair."

In the summer of 1967, during the term of the policy, Mr. Vizzini determined to take "Sea Chanty" to Ocean City, Maryland, where the family planned to spend a vacation. Since this involved a transit of the Chesapeake and Delaware Canal, east of Chesapeake City, he called his insurance broker, and for an additional premium of $10.00, he obtained the following endorsement:

"Permission to use the above yacht in the vicinity of Ocean City, Maryland, including the trip to and from Baltimore, Maryland, for the period of 7-20-67 to 8-15-67."

"Sea Chanty" was placed in the charge of a professional crew, and taken from the Magothy River, a tributary of the Chesapeake Bay, north on the Bay to the Chesapeake and Delaware Canal, through the Canal to the Delaware River, down the River to the Atlantic, and then to Ocean City. During the course of the voyage, the engine overheated, and the captain in whose charge "Sea Chanty" had been placed notified Mr. Vizzini that an oil cooler would have to be installed. Mr. Vizzini ordered the necessary equipment from the engine manufacturer, and directed that it be shipped to the captain's home address.

The parts were not delivered until early September, and on 7 September, the captain went to Ocean City, installed the parts, and commenced the return voyage to the Magothy River, where Mr. Vizzini had arranged to have the installation of the oil cooler completed and certain other repair work done at the shipyard at Gibson Island, on the Magothy.[1]

At about midnight on 7 September, when "Sea Chanty" was northbound on the Delaware, opposite and to the east of Reedy Island, she struck a submerged object and sank. When the Insurer denied liability, Mr. Vizzini brought suit. The Insurer bottomed its defense on the expiration

---

1. Two rubber hoses, necessary to complete the oil cooler installation, were not attached at Ocean City.

of the Ocean City endorsement and the breach of the Chesapeake Bay Warranty.

Judge Jones denied Mr. Vizzini's motion for a directed verdict; denied his request for an instruction that the return voyage was covered by the Ocean City endorsement; denied the Insurer's motion for a directed verdict, and allowed the case to go to the jury on the question whether the casualty occurred within the terms of the Chesapeake Bay Warranty. When the jury returned a verdict for Mr. Vizzini in the amount of $25,000, Judge Jones granted the Insurer's motion for a judgment n.o.v.

We think Judge Jones was right in granting the judgment n.o.v. In her instruction to the jury, she reminded the jury that she had ruled, as a matter of law, that the Ocean City endorsement had expired before the yacht sank, and the loss could not be covered by the endorsement. This was manifestly correct. Policies of marine insurance are generally written for a voyage, *Boston Iron & Metal Co. v. Automobile Ins. Co.*, 157 Md. 205, 145 A. 501 (1929), for a specified period of time, *Export Steamship Corp. v. American Ins. Co.*, 106 F. 2d 9 (2d Cir. 1939), *cert. denied*, 309 U. S. 686, 60 S. Ct. 809, 84 L. Ed. 1029 (1940) or on a "mixed" basis, setting forth both a time limitation upon the duration of the risk, and specifying the voyage covered. In the latter type of coverage, as was the case here, the risk has been held to end at the expiration of the time specified, whether or not the voyage has been completed. See *Pitt v. Phenix Ins. Co.* (N.Y.) 10 Daly 281 (1881); Appleman, 4 *Insurance Law and Practice* § 2403 at 453 (1969); 9 *Couch on Insurance* § 39:291 at 609 (2d ed. 1962); 44 C.J.S. *Insurance* § 36 at 492 (1945).

Vizzini argues that the Ocean City endorsement was a representation, not a warranty, and that a mistaken representation does not void a policy unless there is a material increase in the risk, relying on *Erie Ins. Exchange v. Lane*, 246 Md. 55, 227 A. 2d 231 (1967) and cites *Maryland Fire Ins. Co. v. Whiteford*, 31 Md. 219, 1 Am. R. 45 (1869), which held that there need only be

substantial compliance with a conditional use permitted by endorsement to the policy. Both cases might have been apposite had this been a deviation from the terms of a voyage endorsement.

We regard the Ocean City endorsement as neither a representation nor a warranty, but rather an endorsement which modified the old insurance contract and created a new one for the time specified.

> "A representation is an oral or written statement that precedes the contract of insurance, and is no part thereof unless it is otherwise stipulated, made by the insured or his authorized agent to the insurer or his authorized agent, and relates to the existence of facts or conditions with respect to the subject of the insurance, knowledge of which is necessary in order to enable the insurer to determine whether it will accept the risk, and at what premium. Thus, the representation is a statement offered by the insured as a basis for contracting." 7 Couch, *supra*, § 35:3 at 10.

The endorsement was simply a modification of the contract, and was no more a representation than an endorsement which might have extended the final termination date of the policy.

Neither can the endorsement be considered a warranty.

> "Generally speaking, a warranty in the law of insurance is a statement, stipulation, or condition which forms a part of the contract, whereby the insured contracts as to the existence of certain facts, circumstances, or conditions, the literal truth as to which is essential to the validity of the contract." 7 Couch, *supra*, § 36:1 at 298.

Since the endorsement contains no affirmation by the insured "as to certain facts, circumstances, or conditions," it cannot be a warranty.

The Ocean City endorsement created a new "mixed" contract of insurance. In *Commonwealth Ins. Co. v. Cropper,* 21 Md. 312 (1864) this Court dealt with a strikingly similar problem. An insurance contract covered a voyage from Baltimore to New York "via the Chesapeake and Delaware Canal to Delaware Bay, and from thence by sea to New York." After the completion of the voyage the vessel was returned to Baltimore and the following endorsement was placed on the policy:

> "$27—Baltimore, June 4th, 1856. It is hereby understood, that this policy shall cover $2,500 on steamer *E. J. Dupont,* from Baltimore to New York, at the rate of one and one-half per cent., subject to steamboat clause, on vessel, valued at $6,000.-$2,500 *a* 1½ per cent., $35.50 premium."
> 21 Md. at 317.

The ship once again embarked for New York, this time not by way of the Chesapeake and Delaware Canal, but down the Chesapeake Bay to the Atlantic Ocean, where it stranded and was lost. The insurer refused to honor the insured's claim, alleging that the ship had deviated from the Canal route. In finding for the insured the Court said that the endorsement created

> "a new and distinct contract, covering another and different voyage. The effect of indorsing it upon the former policy and referring thereto, was to make the new contract subject to the terms and stipulations contained in the policy, except in so far as they varied by the terms of the indorsement." 21 Md. at 319.

Since the second endorsement specified no route, recovery was allowed under the policy.

Upon the expiration of the Ocean City endorsement on 17 August 1967, the coverage was that afforded by the original contract of insurance, including the Chesapeake Bay Warranty.

Judge Jones let the case go to the jury on the question of the Chesapeake Bay Warranty, which on first impression, she regarded as ambiguous. Had the provision been ambiguous, her action could not have been faulted. We have long held that the interpretation of an unambiguous insurance contract is a question of law for the court, but that the construction of an ambiguous contract is a question to be determined by the jury, *Government Employees Ins. Co. v. DeJames,* 256 Md. 717, 261 A. 2d 747 (1970) and particularly the cases cited at 720. See also, *H.R. Weissberg Corp. v. New York Underwriters Ins. Co.,* 260 Md. 417, 272 A. 2d 366 (1971).

On reflection, Judge Jones decided, as do we, that the Chesapeake Bay Warranty was not ambiguous, that the case should not have gone to the jury, and granted the motion for judgment n.o.v. Judge Jones said:

"In the judgment of this Court this language is clear and there is no doubt as to its meaning. The vessel had the privilege under the warranty to transit the Chesapeake and Delaware Canal but not east of Chesapeake City, Maryland, the only exception thereto being that it could continue on through the canal and navigate the Delaware River for one purpose and one purpose only, i.e., storage and/or repair, and in any event even for this purpose it was not to go below Reedy Island. The facts construed most favorably to the plaintiff show that at the time of the mishap the vessel was not in the Delaware River for repairs or storage only within the meaning of the warranty, but it was there simply on the return voyage from Ocean City to its home waters where it would undergo certain repairs. This, in the judgment of the Court, was for a reason not covered by the warranty. The plain unfortunate fact is that the vessel overstayed the time specified in the endorsement for the Ocean City trip and the owner took the risk

of not having the endorsement extended to cover the return trip."

We cannot read the warranty any other way, and conclude that "Sea Chanty" was not covered by the policy at the time of the casualty.

*Judgment affirmed, costs to be paid by appellant.*