**PORT LYNCH, INC. and Interstate Production Credit Association, Plaintiffs,**

**v.**

**NEW ENGLAND INTERNATIONAL ASSURETY OF AMERICA, INC., Atlantic Gulf Marine Ins. Inc., American Marine & General Ins. Co., Ltd., American Atlantic Ins. Co., Ltd. and American Trade Ins. Co., Ltd., Monroe Ins. Brokerage, William Monroe, Barnhardt Marine Ins. Inc. and Frank L. Barnhardt, Defendants.**

No. C89–465Z.

United States District Court,
W.D. Washington, N.D.

Jan. 7, 1991.

Allan L. MacDougall, Madden, Poliak, MacDougall & Williamson, Seattle, Wash., for Port Lynch, Inc., and Interstate Production Credit Ass'n.

Robert J. Bocko, Bradbury, Bliss & Riordan, Seattle, Wash., for American Marine & General Ins. Co. Ltd.

Lloyd B. Ericsson and Robert John Ericsson, Martin, Bischoff, Templeton, Ericsson & Langslet, Portland, Or., for American Atlantic Ins. Co., Ltd. and American Trade Ins. Co., Ltd.

Barbara L. Holland and Anne F. Preston, Garvey, Schubert & Barer, Seattle, Wash., for Monroe Ins. Brokerage, and William Monroe.

Joseph Stephen Stacey, LeGros, Buchanan, Paul & Whitehead, Seattle, Wash., for Barnhardt Marine Ins. Inc., and Frank L. Barnhardt and Atlantic Gulf Marine Ins., Inc.

## ORDER GRANTING UNDERWRITERS' MOTIONS FOR SUMMARY JUDGMENT

ZILLY, District Judge.

This matter comes before the Court on a motion for summary judgment by American Trade Insurance Company and American Atlantic Insurance Company ("American Trade" and "American Atlantic," respectively) against the plaintiff Port Lynch, Inc. (docket no. 72). Atlantic Marine and General Insurance Company ("Atlantic Marine") joins in American Trade and American Atlantic's motion for summary judgment (docket no. 84), and also makes an

independent motion for summary judgment, based solely on the issue of Port Lynch's breach of its warranty of navigation (docket no. 85). The Court, having considered these motions and all papers filed in support of and in opposition to the motions, and having heard oral argument on November 16, 1990, does hereby GRANT the underwriters' motions for summary judgment (docket nos. 72, 84 and 85).

## I. BACKGROUND

This is a dispute over insurance coverage for a fire that occurred aboard the fishing vessel HAWAIIAN PRINCESS on July 2, 1988, causing the total loss of the vessel. The loss occurred while the vessel was in transit from crab fishing grounds in the Bering Sea, more than 1000 miles from southeast Alaska. Plaintiff Port Lynch is the owner of the vessel.

Port Lynch procured hull and machinery insurance for six of its vessels, including the HAWAIIAN PRINCESS, through its insurance brokers, Monroe Insurance and Brokerage and William Monroe (collectively, "Monroe"). In attempting to place the insurance, Monroe enlisted the assistance of other brokers, Frank Barnhardt and Barnhardt Marine Insurance (collectively, "Barnhardt"), who work almost exclusively in marine insurance. Barnhardt, with the assistance of Monroe, placed the first $300,000 of hull and machinery insurance with New England International Assurety of America ("New England"). New England is now in receivership in Louisiana and unable to pay on the policy. Barnhardt and Monroe also placed an excess $200,000 hull and machinery insurance policy with the Atlantic Gulf and West Indies Underwriting Group ("AGWI"). Atlantic Gulf & Marine Insurance ("Atlantic Gulf"), an affiliate of Barnhardt, acted as an agent for the hull and machinery underwriters for this excess $200,000 policy. The underwriters for this excess policy included, among others, American Trade Insurance Company, American Atlantic Insurance Company, and Atlantic Marine and General Insurance

Company (collectively, the "Underwriters").

Some time after Port Lynch filed a claim for the loss to the HAWAIIAN PRINCESS, the Underwriters denied coverage for the loss. Port Lynch then brought this action against New England and the Underwriters for the excess hull and machinery policy seeking recovery under the primary and excess policies for the loss. The Underwriters now move for summary judgment, asserting that no coverage is available to Port Lynch as a matter of law for four reasons. First, they argue that the policy is void *ab initio* because of material misrepresentations by the plaintiff in attempting to procure the marine insurance. Second, they contend that Port Lynch breached the warranty of navigation by using the HAWAIIAN PRINCESS in the Bering Sea instead of processing shrimp at anchor in southeast Alaska. Third, they claim that the plaintiff breached the trading warranty in that the vessel was under power and engaged in crabbing instead of being anchored and processing shrimp. Finally, the Underwriters argue that Port Lynch breached the warranty of seaworthiness in that the vessel sailed without the fire fighting equipment which had been recommended by the hull surveyor prior to the loss.

## II. DISCUSSION

### A. *Summary Judgment Standard*

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Thus, the question is whether the evidence, together with permissible inferences drawn from that evidence, is sufficient to establish a "genuine issue as to any material fact." *United Steelworkers of America v. Phelps Dodge Corp.*, 865 F.2d 1539 (9th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 51, 107 L.Ed.2d 20 (1989).

## B. *Applicable Law*

Of primary importance for the purpose of deciding these motions for summary judgment is whether state insurance law or federal admiralty law applies to the dispositive issues in this case. Unlike many other cases which have confronted this issue, there are significant differences here between federal admiralty precepts and state insurance law as it relates to some issues. If federal law applies, plaintiff's insurance policy may be held void *ab initio* because federal cases hold that any misrepresentation or nondisclosure of a material fact will void the policy *ab initio*, regardless of the intent of the party who omitted or misrepresented the material fact. *Puritan Ins. Co. v. Eagle S.S. Co. S.A.*, 779 F.2d 866, 870 (2d Cir.1985); *Gulfstream Cargo, Ltd. v. Reliance Insurance Co.*, 409 F.2d 974, 980–81 (5th Cir.1969). Moreover, with respect to breaches of express warranties in a marine insurance contract, there is federal case law which calls for strict construction and renders policies void where such warranties are violated, even if there is no causal connection between the breach and the loss which has occurred. *Lexington Ins. Co. v. Cooke's Seafood*, 835 F.2d 1364 (11th Cir.1988).

If state law applies, plaintiff has a greater chance of recovering from its excess hull and machinery underwriters. Under Washington law, a misrepresentation or omission does not void an insurance policy unless the misrepresentation is material to the loss. *Miller v. Commercial Union Assur. Co.*, 69 Wash. 529, 125 P. 782, 784 (1912); *Rondys, Inc. v. Insurance Co. of North America*, 1988 AMC 2234, 1986 WL 22350 (D.Or. 1986) (applying Washington law). Moreover, Washington law provides that no oral or written misrepresentation can be deemed material or defeat an insurance contract unless the misrepresentation or warranty was made with the intent to deceive. RCW 48.18.090(1).

To resolve this issue, the court must consider the application of *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955). In *Wilburn Boat*, the Supreme Court considered whether federal admiralty law or state law governed the validity and scope of warranties in a marine insurance policy. In that case, the original owners of a small houseboat insured the houseboat against loss from fire and other perils. Subsequent owners of the boat used the boat for commercial carriage of passengers on a small artificial inland lake. While moored on the lake, the boat was destroyed by fire. In an action brought by the original owners, the insurers denied liability because of breaches of policy warranties providing that the boat would not be transferred without the insurers' consent and that the boat would be used for pleasure purposes only.

The district court and the court of appeals had applied, as a matter of federal admiralty law, the "literal performance" rule. This rule requires literal fulfillment of every policy warranty so that any breach would bar recovery. The Supreme Court reversed and remanded the case, holding that there was no established federal admiralty rule governing warranties of the kind involved in *Wilburn Boat*, that it would be inappropriate for the Court to fashion such a rule, and that in the absence of a federal rule of law, the scope and validity of such warranties were governed by state law. The Court emphasized that the Court had always treated marine insurance contracts, like all others, as subject to state control, and that the judicial and legislative history of insurance regulation warned against the judicial creation of admiralty rules to govern marine policy terms and warranties.

Federal courts have struggled in their application of *Wilburn Boat*, calling the decision "confusing" and "enigmatic." *See, e.g., Albany Ins. Co. v. Wisniewski*, 579 F.Supp. 1004, 1013 (D.R.I.1984); *Transit Casualty Co. v. Pedersen Fisheries, Inc.*, C83–1471 (W.D. Wash. February 8, 1985). In *Bohemia, Inc. v. Home Ins. Co.*, 725 F.2d 506 (9th Cir.1984), an action was brought by the insured and its excess insurer on a marine insurance policy against

the Home Insurance Company. Applying *Wilburn Boat*, the court approved the application of federal admiralty law rather than state law for interpreting the marine policy. The *Bohemia* court concluded that *Wilburn Boat*, when read together with *Kossick v. United Fruit Co.*, 365 U.S. 731, 741–42, 81 S.Ct. 886, 893–94, 6 L.Ed.2d 56 (1961), holds "that state law will control the interpretation of a marine insurance policy only in the absence of a federal statute, a judicially fashioned admiralty rule, or a need for uniformity in admiralty practice." *Bohemia*, 725 F.2d at 510. *See also Rondys*, 1988 AMC at 2239. Because the *Bohemia* court found a federal admiralty rule concerning the issues involved in the case, the court applied that federal admiralty rule.

■ The Court finds that the standard in the Ninth Circuit for applying federal admiralty law or state law is set forth in *Bohemia* as follows: state law controls in the absence of a federal statute, a judicially fashioned admiralty rule, or a need for uniformity in admiralty practice. In this case, the Underwriters argue that they are entitled to summary judgment as a matter of law for four reasons: (1) misrepresentation, (2) breach of the warranty of navigation, (3) breach of the trading warranty, and (4) breach of the warranty of seaworthiness. With respect to each issue raised by the Underwriters, it is therefore necessary for the court to determine if there is a judicially fashioned admiralty rule or a need for uniformity in admiralty practice which would mandate the application of federal law. If there is not, the court must apply the law of the state with the greatest interest in the case, which is the State of Washington. *Lien Ho Hsing Steel Enterprise Co. v. Weihtag*, 738 F.2d 1455, 1458 (9th Cir.1984).

1. *MISREPRESENTATION.* The Underwriters argue that the excess hull and machinery policy is void *ab initio* because Port Lynch made material misrepresentations in attempting to procure the insurance. The Underwriters assert that Port Lynch failed to provide its insurance broker with a current survey report from 1987 which showed that the vessel lacked adequate fire fighting equipment, particularly a Halon fire extinguishing system in the engine compartment. Instead, Port Lynch submitted only a survey from 1985, which allegedly did not show such a defect. The Underwriters claim that the 1987 survey was material and would have influenced the Underwriters' decisions with respect to whether any coverage would be provided and the premium charged. Plaintiff's response to this argument is that its failure to submit the 1987 report was due to inadvertence on the part of its new office manager, Hal Edwards, and was therefore not done with the intent to deceive, and under state law intent to deceive is required before underwriters can prevail on their misrepresentation claim. Plaintiff also argues that the 1987 survey was not material because: (1) the surveyor merely recommended the installation of Halon fire fighting units "as required," and the installation of such units is not legally required for vessels of the HAWAIIAN PRINCESS's size; and (2) an expert, John Adams, president of a specialty marine insurance brokerage, stated in his deposition that he has issued and would issue insurance on vessels similar to the HAWAIIAN PRINCESS without a fixed fire fighting system in the engine room.

a. *Federal Maritime Law Concerning Misrepresentation and Nondisclosure.*

It is a well established principle of general marine law that marine insurance is a contract *uberrimae fidei*, requiring the utmost good faith by both parties to the contract.[1] *Gulfstream Cargo*, 409 F.2d at 981; *Puritan Ins. Co. v. Eagle S.S. Co. S.A.*, 779 F.2d 866, 870 (2d Cir.1985); *Reliance Ins. Co. v. McGrath*, 671 F.Supp. 669, 678 (N.D.Cal.1987); *Sun Mutual Ins. Co. v. Ocean Ins. Co.*, 107 U.S. 485, 1 S.Ct. 582, 27 L.Ed. 337 (1883). Accordingly, un-

---

1. As early as 1906, the English Marine Insurance Act, 6 Edw. 7, C. 41, provided that a contract of marine insurance is a contract based upon the utmost good faith. *See* discussion in *Pacific Queen Fisheries v. Symes*, 307 F.2d 700, 708 (9th Cir.1962).

der established maritime law, a marine insurance policy is void *ab initio* where the insured fails to disclose material increases in the marine risk or makes misrepresentations material to the marine risk. *Gulfstream Cargo*, 409 F.2d at 980–81.

In almost all the federal cases where the issue of misrepresentation or nondisclosure has been raised as a defense to coverage under a marine insurance policy, courts have applied the general rule of marine insurance, requiring full disclosure of all material facts by the insured and holding policies void *ab initio* where the insured fails to comply with this duty. *See, e.g., Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 13 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987) ("Parties to a marine insurance policy must accord each other the highest degree of good faith" and any material nondisclosure voids the policy); *Gulfstream Cargo*, 409 F.2d at 980–81 (affirmative misrepresentation of condition of vessel voids the policy; insured failed to disclose a second survey report showing vessel as unfit for any use offshore); *Pacific Queen Fisheries v. Symes*, 307 F.2d 700, 706–711 (9th Cir.1962), *cert. denied*, 372 U.S. 907, 83 S.Ct. 721, 9 L.Ed.2d 717 (1963) (material nondisclosure voids marine insurance); *Steelmet, Inc. v. Caribe Towing Corp.*, 747 F.2d 689, 695 (11th Cir.1984) ("The general rule of marine insurance, requiring full disclosure, is well settled in this circuit, and as a clear rule of maritime law it is the controlling federal rule even in the face of contrary state authority."), *vacated in part, adhered to in relevant part*, 779 F.2d 1485 (11th Cir.1986); *Reliance Ins. Co. v. McGrath*, 671 F.Supp. 669, 678 (N.D.Cal. 1987) (both federal maritime and California law require full disclosure in marine insurance cases); *Wisniewski*, 579 F.Supp. at 1013–15 (failure to disclose purchase price of vessel constituted grounds for rescission under both federal and New York law). In many of these cases, the rule requiring full disclosure of all material facts has been applied as a matter of general maritime law. In some cases, however, where the court has considered the impact of *Wilburn Boat*, the court has applied this rule

both as an established federal maritime law and as a matter of state law, holding that "in the absence of significant differences between federal marine insurance principles and applicable state law, [the court] need not board the *Wilburn Boat*." *Wisniewski*, 579 F.Supp. at 1014; *McGrath*, 671 F.Supp. at 678. *See also Gulfstream Cargo*, 409 F.2d at 981.

### b. *State Law.*

In the present case, there is a Washington state statute which varies the established maritime law. RCW 48.18.090(1) provides that "no oral or written misrepresentation or warranty made in the negotiation of an insurance contract, by the insured or on his behalf, shall be deemed material or defeat or avoid the contract or prevent it attaching, unless the misrepresentation or warranty is made with the intent to deceive." Although the statute speaks only of affirmative misrepresentations, Washington courts have held that, consistent with the policy behind RCW 48.-18.090(1), the failure to provide information not requested by an insurer does not vitiate the contract, absent proof that such silence amounts to fraud or bad faith. *State v. United Pacific Ins. Co.*, 26 Wash.App. 68, 72, 612 P.2d 809 (1980). Applying these state law principles to a marine insurance contract, the district court, in *Rondys*, 1988 AMC at 2241, held that a marine policy was not voided where there was no evidence that the insured's failure to disclose certain facts was done with the intent to deceive and where the undisclosed facts were not material to the transaction. The *Rondys* court failed to address the conflict between Washington law and federal law with respect to Washington's requirement that misrepresentations be made with the intent to deceive, but the court did state that both state law and federal law required that misrepresentations be material. *Rondys*, 1988 AMC at 2241.

### c. *Wilburn Boat Analysis.*

■ *Bohemia* provides that under *Wilburn Boat*, state law will control the interpretation of a marine insurance policy only in the absence of a federal statute, a judicially fashioned admiralty rule, or a need

822

for uniformity in admiralty practice. *Bohemia*, 725 F.2d at 510. Thus, if there is a judicially fashioned admiralty rule governing the issue at hand, the court must apply that federal admiralty rule, not state law, to resolve the issue. With respect to the issue of Port Lynch's alleged misrepresentation or nondisclosure of the 1987 survey report, the Court finds that there is an established federal admiralty rule governing the duty of disclosure and, therefore, federal admiralty law applies to that specific issue.

■ Under established federal maritime law, the insured has a duty to disclose voluntarily to the insurer, even though no inquiry is made, every material fact and circumstance within his knowledge and unknown (or fairly presumed to be unknown) to the insurer. An insured's failure to do so, intentionally or otherwise, allows the insurer to have the contract declared void *ab initio* if the nondisclosure was material to the risk. *See, e.g., Sun Mutual Ins. Co. v. Ocean Ins. Co.*, 107 U.S. 485, 1 S.Ct. 582, 27 L.Ed. 337 (1883); *Puritan Ins. Co. v. Eagle S.S. Co. S.A.*, 779 F.2d 866, 870 (2d Cir.1985); *Gulfstream Cargo, Ltd. v. Reliance Ins. Co.*, 409 F.2d 974, 981 (5th Cir.1969); *Pacific Queen Fisheries v. Symes*, 307 F.2d 700, 706–11 (9th Cir.1962), *cert. denied*, 372 U.S. 907, 83 S.Ct. 721, 9 L.Ed.2d 717 (1963); *Kilpatrick Marine Piling v. Fireman's Fund Ins. Co.*, 795 F.2d 940, 942–43 (11th Cir.1986); *Reliance Insurance Co. v. McGrath*, 671 F.Supp. 669, 678 (N.D.Cal.1987); *Contractors Realty Co. v. Insurance Co. of North America*, 469 F.Supp. 1287, 1294 (S.D.N.Y.1979); *Albany Ins. Co. v. Wisniewski*, 579 F.Supp. 1004, 1016 (D.R.I.1984). As recognized in *Fireman's Fund Ins. Co. v. Wilburn Boat Co.*, on remand from the Supreme Court, this rule concerning nondisclosure of material facts is well established in federal maritime law:

> There is good reason behind appellant's argument that federal maritime law, rather than state law, governs [the defense of nondisclosure raised in connection with a marine insurance policy]. Appellant contends, and we agree, that *Fireman's Fund Ins. Co. v. Wilburn Boat Co.*, 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337, merely held that state law is to be applied in the field of marine insurance only where "entrenched federal precedent is lacking" with respect to a specific issue. This is the interpretation which the Supreme Court itself and the Court of Appeals for the Second Circuit has placed on that decision. See *Kossick v. United Fruit Co.*, 365 U.S. 731, 742, 81 S.Ct. 886 [894], 6 L.Ed.2d 56 [1961], and *Purofied Down Products Corp. v. Travelers Fire Ins. Co.*, 2 Cir., 278 F.2d 439, 441 n. 1 [1960]. Since the above stated rule of concealment in marine insurance is solidly entrenched in our body of federal maritime law [citation omitted], it would seem that this rule should apply in the instant case. Because, however, we believe that the same rule obtains in Texas, this point is of minimal significance to a decision here.

*Fireman's Fund Ins. Co. v. Wilburn Boat Co.*, 300 F.2d 631, 647 n. 12 (5th Cir.), *cert. denied*, 370 U.S. 925, 82 S.Ct. 1562, 8 L.Ed.2d 505 (1962). In light of the near universal adoption of this rule by federal courts, this Court holds that federal admiralty law will be applied to the underwriters' defense of misrepresentation or nondisclosure in this case.

■ Applying federal admiralty law to the case at hand, the Court finds that Port Lynch's failure to provide the Underwriters with the 1987 survey will void the policy if the survey was material to the risk. *Puritan Ins. Co.*, 779 F.2d at 870; *M/V Papoose*, 1966 A.M.C. 385, 389–90 (S.D.Fla. 1965). A fact is material if it is "something which would have controlled the underwriter's decision" to accept the risk. *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 13 (2d Cir. 1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987) (quoting *Btesh v. Royal Ins. Co., Ltd.*, 49 F.2d 720, 721 (2d Cir.1931)). The standard for disclosure is an objective one, that is, whether a reasonable person in the assured's position would know that the particular fact is material. *Id.* The issue of whether a nondisclosure is material so as to entitle an underwriter to void the policy is an issue of fact.

*American Home Assur. Co. v. Fremont Indem. Co.*, 745 F.Supp. 974 (S.D.N.Y.1990) (citing *Knight v. U.S. Fire Ins. Co.*, 651 F.Supp. 477, 481 (S.D.N.Y.), *aff'd*, 804 F.2d 9 (2d Cir.1986)). In the present case, it is disputed whether the 1987 survey was material to the risk insured. Accordingly, because there is a genuine issue of fact relating to the 1987 survey, summary judgment on this issue is inappropriate.

■ *2. BREACH OF NAVIGATION AND TRADING WARRANTIES.* The Underwriters also contend that Port Lynch cannot recover as a matter of law because Port Lynch breached the warranty of navigation in the policy by navigating the HAWAIIAN PRINCESS in the Bering Sea instead of anchoring the vessel in southeast Alaska. The policy contained a warranty that the vessel would be used for processing shrimp in southeast Alaska;[2] the loss occurred while the vessel was crabbing in the Bering Sea more than 1000 miles north. They also argue that plaintiff Port Lynch breached its trading warranty in that the HAWAIIAN PRINCESS was under power and engaged in crabbing at the time of the fire instead of being anchored and processing shrimp. Plaintiff responds to these contentions by arguing first that Port Lynch owners never saw the policy until after the loss. While the owners admit providing the brokers with a fishing schedule, they claim that they never intended the schedule to be a "promissory warranty." Alternatively, the plaintiff argues that even if the court finds that Port Lynch had a positive duty to be anchored and processing shrimp in southeast Alaska, *Wilburn Boat* requires the application of state law, and state law provides that there must be a causal connection between a breach of warranty and the loss. *Riordan v. Commercial Travelers Mut. Ins. Co.*, 11 Wash.App. 707, 525 P.2d 804 (1974) (exclusionary clause in accident-health insurance contract excepting from coverage losses incurred while insured is intoxicated applicable only if the injury *results* from the proscribed activities); *Oregon Auto. Ins. Co. v.*

*Salzberg*, 85 Wash.2d 372, 535 P.2d 816 (1975) (insured's failure to comply with duty of cooperation clause in automobile insurance policy relieves the insurer of his duty to defend only if the insurer is actually prejudiced). According to Port Lynch, the Underwriters have not shown any causal connection between Port Lynch's breach of the navigation warranty and the fire in the engine room.

The Underwriters argue that there is an established federal admiralty law governing breaches of express navigation warranties which must be applied in this case. Most significantly they cite *Lexington Ins. Co. v. Cooke's Seafood*, 835 F.2d 1364, 1366 (11th Cir.1988), a case involving a 100–mile navigation limit, in which the court held that admiralty law requires the strict construction of express warranties in marine insurance contracts, and that breach of an express warranty by the insured will release the insurance company from liability, even if compliance with the warranty would not have avoided the loss. The Court finds that *Lexington* and other cases decided before and after *Wilburn Boat* establish that there is a federal admiralty rule concerning the strict construction of navigation and trading warranties in marine insurance contracts. Under this established federal rule of admiralty, a breach of an express trading or navigational warranty releases the insurance company from liability even if compliance with the warranty would not have avoided the loss.

It is well established under general maritime law that "where a vessel ventures voluntarily outside of the navigational limits specified in a hull policy, and sinks or is otherwise destroyed while outside the mentioned limits, the insurer is relieved from liability for the loss of the vessel." *Lexington Ins. Co. v. Cooke's Seafood*, 686 F.Supp. 323, 327 (S.D.Ga.1987), *aff'd*, 835 F.2d 1364 (11th Cir.1988) (citing *United States Fire Ins. Co. v. Cavanaugh*, 732 F.2d 832 (11th Cir.), *cert. denied*, 469 U.S. 1036, 105 S.Ct. 512, 83 L.Ed.2d 402 (1984); *Robinson v. Home Ins. Co.*, 73 F.2d 3 (5th

**2.** Under the heading "NAVIGATION LIMITS," the policy states in relevant part, "May/15 to

Sept/1—Southeast Alaska anchored, processing shrimp with six (6) crew, ..."

Cir.1934), *cert. denied*, 294 U.S. 712, 55 S.Ct. 508, 79 L.Ed. 1246 (1935); *Canton Ins. Office v. Indep. Transp. Co.*, 217 F. 213 (9th Cir.1914); *R & W Boat Rentals v. Pennsylvania Ins. Co.*, 1972 A.M.C. 1783, 257 So.2d 448 (Ct.App.La.1972); *Vizzini v. Insurance Co. of North America*, 260 Md. 626, 273 A.2d 137 (1971); *Rosenberg v. Maritime Ins. Co.*, 1968 A.M.C. 1609, 212 So.2d 45 (Ct.App.Fla.1968); *Rosenbauer v. Standard Ins. Co.*, 1949 A.M.C. 716 (Cir. Ct.Fla.1949)). *See also Graham v. Milky Way Barge, Inc.*, 824 F.2d 376, 383 (5th Cir.1987). Nevertheless, the plaintiffs maintain that there is no established federal maritime law governing navigational and trading limits, and that therefore *Wilburn Boat* mandates that the case be determined on the basis of state law. They argue further that the Supreme Court's finding in *Wilburn Boat* that there is no settled federal admiralty rule requiring "literal performance" of express warranties is tantamount to a finding that there is no federal admiralty rule requiring strict construction of navigational and trading limits in marine insurance policies. The Court is not persuaded by these arguments.

*Wilburn Boat* does not require this court to reject solidly entrenched rules of maritime law applicable to the precise types of warranties at issue in this case in favor of applying general state insurance principles. As stated earlier, *Wilburn Boat* merely provides that state law will control the interpretation of a marine insurance policy only in the absence of a federal statute, a judicially fashioned admiralty rule, or a need for uniformity in admiralty practice. With respect to the interpretation of navigational and trading warranties, the Court holds that there is both a judicially fashioned admiralty rule which applies and a need for uniformity in admiralty practice. The federal admiralty rule requiring strict interpretation of navigational and trading limits has been adopted and applied by almost every federal court which has considered the scope and effect of navigational and trading limits in marine insurance policies. Such cases include *Robinson*, 73 F.2d at 4; *Graham*, 824 F.2d 376, 383; *United States Fire Ins. Co. v. Cavanaugh*, 732

F.2d 832, 834 (11th Cir.), *cert. denied*, 469 U.S. 1036, 105 S.Ct. 512, 83 L.Ed.2d 402 (1984); *Lexington*, 686 F.Supp. 323, 327, *aff'd*, 835 F.2d 1364; and *Canton Ins. Office*, 217 F. 213.

As contrary authority, the plaintiffs cite *Highlands Ins. Co. v. Koetje*, 651 F.Supp. 346 (W.D.Wash.1987), *Rondys*, 1988 A.M.C. 2234 (D.Or.1988), and *Transit Casualty Co. v. Pedersen Fisheries*, No. 83–1471R (W.D.Wash. February 8, 1985). However, the Court finds these cases inapplicable. In *Koetje*, the parties to the marine insurance contract stipulated to the application of Washington law. In *Pedersen* and *Rondys*, the warranties at issue were not navigation or trading warranties. In *Pedersen*, the express warranty required the posting of a stability report in the pilot house of the vessel OCEAN GRACE. The court noted that where a breach of warranty has "absolutely no relationship to the cause of the loss," then Washington courts would not deny coverage. In *Rondys*, the policy provided that the policy would be void if there was any sale or mortgage of the vessel, or change of management or charter or if the policy was assigned without the previous consent of the underwriters. The issue presented was whether the lease of the vessel and the hiring of a new captain constituted a change in management. The condition set forth in the policy was not related in any way to the injuries sustained by a crew member which gave rise to the litigation. In contrast, the condition of navigation in the policy at issue deals with the most basic issue in a marine insurance policy, that is, where a vessel will operate during the period of insurance. The territorial limit within which any vessel is to navigate is critical to any marine policy and clearly affects the risk to be undertaken. In this case, the HAWAIIAN PRINCESS was in the Bering Sea, over 1000 miles from the agreed navigation limits of "Southeast Alaska anchored, processing shrimp ..." Limits of navigation in marine insurance policies have long been held by the admiralty courts to require a uniform rule of law. These limits are and should be governed by a uniform body of

admiralty law. As reasoned by the trial judge in *Lexington:*

> Navigation warranties are peculiarly maritime in nature, unlike the warranty at issue in *Wilburn Boat.* And not only is the uniformity so essential to a coherent body of admiralty law advanced by maintaining a federal rule concerning the effect of a breach of a trading limit warranty, *see generally Offshore Logistics v. Tallentire,* 477 U.S. 207, 106 S.Ct. 2485, 91 L.Ed.2d 174 (1986) (state wrongful death remedies do not apply on the high seas), [footnote omitted] but federal maritime decisional law concerning the necessity of strict adherence to the terms of *this type of express warranty* was clearly established prior to the *Wilburn Boat* decision. *Robinson v. Home Ins. Co.,* 73 F.2d 3, *supra; Canton Ins. Office v. Indep. Transp. Co.,* 217 F. 213, *supra.*

*Lexington,* 686 F.Supp. at 328 (emphasis in the original). The district judge explained further in *Lexington:*

> Bearing in mind that ships, fishing vessels in particular, often operate in the waters of several or many states, to allow for different standards of coverage where trading limit warranties have been breached according to where a vessel sank, or where the insurance policy providing coverage was issued, etc., would have a severely deleterious effect on uniformity in maritime law.

*Lexington,* 686 F.Supp. at 328 n. 7. This Court agrees with and adopts the trial court's reasoning in *Lexington.* Accordingly, the Court holds that "where a vessel ventures voluntarily outside of the navigational limits specified in a hull policy, and sinks or is otherwise destroyed outside the mentioned limits, the insurer is relieved from liability for the loss of the vessel." *Lexington,* 686 F.Supp. at 327.[3]

■ In the present case, the insurance policy covered the HAWAIIAN PRINCESS while the vessel was processing shrimp in southeast Alaska. It is undisputed that the loss to the HAWAIIAN PRINCESS occurred in the Bering Sea, more than one thousand miles from southeast Alaska. Thus, applying the judicially established federal admiralty rule governing the interpretation and effect of navigation and trading warranties, the Underwriters are relieved from liability for the loss of the HAWAIIAN PRINCESS.

The Court further finds that even assuming *arguendo* that state law applies to the interpretation of these warranties, the result would be the same. In *Reynolds v. Pacific Marine Ins. Co.,* 98 Wash. 362, 167 P. 745 (1917), the Supreme Court of Washington held that the insurer of a vessel was not liable for the loss of that vessel by fire where the loss occurred outside the navigational limits of the policy. The issue in *Reynolds* was whether certain language in a voyage policy, warranting the vessel "to be employed during the currency of this policy in the waters of Puget Sound, British Columbia, and Southeastern Alaska inland waters, not north of Wrangel Narrows," was an essential term of the contract or a condition or warranty. If the limit was a condition or warranty within the meaning of a provision in the State's insurance code, a breach of such warranty or condition would not void the policy unless the breach contributed to the loss. If it was an essential term of the contract, a breach would preclude the owners from recovering under the policy. The Washington court held the navigational limit in the policy to be an essential term of the contract, reasoning as follows:

> One of the essential requisites of a voyage policy of insurance is that it should contain an accurate description of the waters in which the boat covered by the policy is to be while it is insured. In 1 Arnould, on Marine Insurance (9th ed., 1914) vol. 1, p. 25, § 14, it is said:
>
>> "In the case of a voyage policy the underwriter cannot know the nature of the risk he is asked to insure, nor,

---

**3.** The reasoning of *U.S. Fire Ins. Co. v. Liberati,* 1989 AMC 1436 (N.D.Cal.1989), is not persuasive. In *Liberati,* the court held that *Wilburn Boat* requires a federal court to look to state law in determining the consequences of a breach of warranty under a marine policy. *Wilburn Boat* cannot be read so broadly and should not apply in the context of a navigation warranty.

consequently, the amount of premium he ought to require, unless he knows the nature of the voyage on which the ship is to sail, or the goods are to be conveyed. It is therefore one of the most essential requisites of a policy of insurance, that it should contain an accurate description of the voyage insured."

It follows, therefore, that the marginal language of the policy, which specified the waters in which the Arnold was to be while covered by the policy, was an essential part of the contract and, therefore, not such a warranty as is contemplated by the statute.

*Reynolds,* 98 Wash. at 365, 167 P. at 746. *Reynolds* also held that the use of the word "warranted" in the policy there at issue was of no special significance. Rather, the Washington court reasoned that the most essential requisite was the location of the property while it was insured as set forth in the policy. The principles applied by the court in *Reynolds* to the navigational limits in a voyage policy should apply with equal force to the navigational limits set forth in the hull and machinery policy covering the HAWAIIAN PRINCESS. Thus, under Washington law, the navigational limit of a marine insurance policy is an essential term of the marine insurance contract and not a "warranty." Accordingly, applying Washington law to the present case, the Underwriters would not be required to prove that the breach contributed to the loss in order for Port Lynch's insurance coverage to be forfeited.[4]

3. *WARRANTY OF SEAWORTHINESS.* The Underwriters argue that Port Lynch breached the express warranty of seaworthiness in that the vessel broke ground without the fire fighting facilities recommended by its hull surveyor. Port Lynch responds to this argument by asserting (1) that the Underwriters have provided

no evidence that the vessel was unseaworthy at any time relevant to this litigation, (2) that the lack of a Halon fire fighting system is not evidence of unseaworthiness because such a system is not legally required, (3) that because Port Lynch believed that it was complying with the law regarding fire safety measures, the Underwriters cannot show that it had knowledge of the vessel's unseaworthiness, and (4) that the Underwriters have failed to show that a fixed fire system would have saved the vessel.

■■■ The parties do not dispute which law applies to the warranty of seaworthiness. Both parties cite and apply federal case law. Therefore, the Court will not engage in a *Wilburn Boat* analysis with respect to this issue. Under the case law cited by the parties, the insured has an obligation not knowingly to permit the vessel to break ground in an unseaworthy condition. *Saskatchewan Government Ins. Office v. Spot Pack, Inc.,* 242 F.2d 385 (5th Cir.1957). This shipowner's warranty of seaworthiness does not mean, however, that the ship can weather all storms, but rather that the vessel is reasonably fit for its intended use. *Aguirre v. Citizens Casualty Co.,* 441 F.2d 141, 144 (5th Cir.), *cert. denied,* 404 U.S. 829, 92 S.Ct. 65, 30 L.Ed.2d 58 (1971). Determining the seaworthiness of a vessel at a particular moment in time is the responsibility of the trier of fact. *Id.* In the present case, there are genuine issues of fact as to whether the HAWAIIAN PRINCESS was unseaworthy at the time it broke ground and, if so, whether Port Lynch knew the vessel was unseaworthy. Therefore, summary judgment on this issue is inappropriate.

## III. CONCLUSION

The Court finds as a matter of law that Port Lynch was in breach of the naviga-

---

**4.** *Highlands Ins. Co. v. Koetje,* 651 F.Supp. at 349–50, does not hold to the contrary. Rather, Judge Dimmick reasoned that even if state law requires that a "causal connection" must be shown between the breach and the loss, the relationship between a fire loss and a foray into forbidden waters, as in *Reynolds,* is "evident." For this reason, the Court's holding is also con-

sistent with *Riordan* and *Oregon Auto.* The relationship between a breach of a navigation warranty and a loss occurring outside the limits specified in the marine insurance policy is clear. A vessel's excursion beyond the navigational limits set forth in the marine insurance policy seriously alters the nature of the risk undertaken by the insurer.

tional and trading warranties specified in the excess hull and machinery policy at the time the loss of the HAWAIIAN PRINCESS occurred and that, therefore, the Underwriters are relieved from liability for the loss of the vessel. Accordingly, the Underwriters' motions for summary judgment are granted.

IT IS SO ORDERED.