959 F.2d 241
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
SUBSCRIBING UNDERWRITERS AT LLOYD'S and All other
Subscribing Insurance Companies on Certificate No.
RII 1244/Cover Note and Policy Nos.
87H178-0278 and 87H181-0300,
Plaintiffs-Appellants,
v.
Richard COLE, an individual; Kingfisher Charter, Inc., a
corporation, Defendants-Appellees.
 No. 91-55119.
 United States Court of Appeals, Ninth Circuit.
 Submitted April 8, 1992.*
Decided April 14, 1992.
As Amended on Denial of Rehearing June 26, 1992.
 
 Appeal from the United States District Court for the Central District of California; No. CV-89-5699-HLH, Harry L. Hupp, District Judge, Presiding.
 C.D.Cal.
 AFFIRMED AND REMANDED.
 Before: PREGERSON, D.W. NELSON and DAVID R. THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 OVERVIEW
 
 2
 Subscribing underwriters at Lloyd's and all other subscribing insurance companies on Certificate No. RII 1244/Cover Note and Policy Nos. 87H178-0278 and 87H181-0300 ("the underwriters") appeal the district court's interlocutory Determination of Issue on Plaintiff's Case, December 24, 1990 ("Determination"), by which the district court concluded that the underwriters may not rescind their maritime insurance contract with the defendants, Richard Cole and Kingfisher Charter, Inc.[1] The district court had jurisdiction over this admiralty and maritime claim under 28 U.S.C. § 1333.
 
 
 3
 We have jurisdiction under 28 U.S.C. § 1292(a)(3), and we affirm.
 
 FACTS
 
 4
 The "Kingfisher" is a 47-foot sport fishing vessel built in 1968. In 1984, Frances Johnson bought the vessel for $140,000. Johnson set up a corporation, the Kingfisher Charter Inc., to own the "Kingfisher;" Johnson became the sole shareholder. Johnson used the "Kingfisher" for commercial charters carrying up to six persons. A survey made at the time of Johnson's purchase listed the market value of the "Kingfisher" at $225,000.
 
 
 5
 In 1986, Johnson's son had the vessel surveyed again, and again the survey listed the market value at $225,000. Johnson obtained insurance through a surplus lines broker who worked with the underwriters. The agreed value of the "Kingfisher" listed on the insurance policy was $225,000.
 
 
 6
 Johnson tried to sell the "Kingfisher" beginning in 1986 because it was not commercially profitable; a potential buyer's survey set the market value at $80,000. Johnson did not sell to that buyer.
 
 
 7
 In late 1987, an employee of Johnson's urged Cole to consider buying the "Kingfisher." Cole agreed to buy all the stock in the Kingfisher corporation in exchange for assuming the mortgage on the "Kingfisher" in the approximate amount of $99,000 and transferring to Johnson his equity interest in a motor home.[2]
 
 
 8
 In February 1988, Donna Ray, a surplus lines broker, contacted Johnson about renewing the insurance policy on the Kingfisher. Johnson told the broker to contact Cole. Ray called Cole, who indicated that he would like to renew the policy. Ray asked Cole some questions, including his history of loss, the experience of those operating the vessel, and the vessel's purchase price. Cole informed her that he did not buy the "Kingfisher," but instead bought the stock of a corporation that owned the "Kingfisher." Ray did not ask Cole how much he paid for the corporation, and Cole did not tell her. Cole then asked Ray the agreed value listed on the old policy; Ray stated that it was $225,000, and Cole requested that the new policy specify the same agreed value. It did.
 
 
 9
 In February 1989, Cole informed Ray that he wanted to convert his insurance from a commercial policy to a less expensive pleasure boat policy. After consulting with the underwriters who handled pleasure boat policies, Ray told Cole that a new survey of the "Kingfisher" would be necessary. Because both Cole and Ray were going on vacation, Cole obtained a 60-day extension of the commercial policy from the underwriters, for which he paid a pro rata premium of $870.
 
 
 10
 On April 10, 1989, while the 60-day extension was in effect, Cole lent the "Kingfisher" to two friends. The vessel hit some rocks near Santa Cruz Island and sank. The parties stipulated that the "Kingfisher" was a constructive total loss.
 
 
 11
 Cole demanded payment of the $225,000 agreed value. The underwriters refused, and filed a declaratory relief action seeking rescission of the insurance contract. They alleged that Cole deliberately had the vessel scuttled, and that Cole failed to disclose material facts to the underwriters. Cole counterclaimed for bad faith.
 
 
 12
 The district court severed the two actions. Following a bench trial on the underwriters' claims, the court found that Cole did not have the vessel scuttled, and that any facts Cole failed to reveal to the underwriters were not material. The court entered its interlocutory order denying the underwriters' claims for rescission. This appeal followed.[3]
 
 DISCUSSION
 A. Choice of Law
 
 13
 Whether federal admiralty law or state insurance law controls in marine insurance cases is a particularly vexing problem. See Albany Ins. Co. v. Kieu, 927 F.2d 882 (5th Cir.), cert. denied, 112 S.Ct. 279 (1991); Port Lynch, Inc. v. New England Int'l Assurety, 754 F.Supp. 816, 819-20 (W.D.Wash.1991). We need not determine the appropriate law to apply, however, because, as the district court determined, federal admiralty law and California insurance law impose essentially the same standards on the issues before us. See id. at 819. The parties do not dispute this.
 
 B. Duty to Disclose Material Facts
 1. Utmost Good Faith
 
 14
 In a marine insurance contract, the parties are bound to exercise the utmost good faith, or uberrimae fidei. Pacific Queen Fisheries v. Symes, 307 F.2d 700, 708 (9th Cir.1962) (quoting the Marine Insurance Act of 1906), cert. denied, 372 U.S. 907 (1963); see also Alex L. Parks, 1 The Law and Practice of Marine Insurance and Average 216 (1987).
 
 
 15
 California law recognizes that the duty of an insured under a marine insurance contract is different from what it is under other types of insurance. Washington Int'l Ins. Co. v. Mellone, 773 F.Supp. 189, 191 (C.D.Cal.1990). According to section 1900 of the California Insurance Code:
 
 
 16
 In marine insurance each party is bound to communicate, in addition to what is required in the case of other insurance:
 
 
 17
 (a) All the information he possesses and which is material to the risk, except such as is exempt from such communication in the case of other insurance.
 
 
 18
 (b) The exact and whole truth in relation to all matters that he represents or, upon inquiry assumes to disclose.
 
 
 19
 The insured "is bound, even if not asked, to reveal every fact within his/her knowledge that is material to the risk." Hartford Ins. Co. v. Garvey, 1989 A.M.C. 652, 658 (N.D.Cal.1988). A marine insurance policy is void ab initio when the insured fails to disclose material increases in the risks insured. Pacific Fisheries, 307 F.2d at 706, 711; Reliance Ins. Co. v. McGrath, 671 F.Supp. 669, 678 (N.D.Cal.1987). The insurer is entitled to rescission if it can show nondisclosure of a fact material to the risk, regardless of intent. Cal.Ins.Code § 1904; Washington Int'l Ins. Co., 773 F.Supp. at 191. An insurer also is entitled to rescission if the insured made an intentional misrepresentation, regardless of materiality. Id.[4]
 
 
 20
 To be material, the fact must influence the judgment of a reasonable insurer in fixing the premium, or in determining if it will take the risk. Marine Insurance Act of 1906, § 18(2); see also Cal.Ins.Code § 334 (materiality determined "solely by the probable and reasonable influence of the facts upon the party"). Materiality is a factual finding reviewed for clear error. Port Lynch, 754 F.Supp. at 822-23.
 
 
 21
 2. Materiality of Cole's Misrepresentations or Omissions
 
 
 22
 Preliminarily, we note that the underwriters argue that the district court applied an incorrect legal standard to determine materiality.[5] We disagree. The district court's Determination discusses the immateriality of Cole's nondisclosures, and nothing there reveals that the court applied an incorrect legal standard. We therefore turn to the specific findings regarding materiality.
 
 
 23
 The court found that the Johnson-Cole agreement was not a typical arms-length transaction, and therefore the purchase price did not adequately reflect the "Kingfisher's" market value. This finding is not clearly erroneous. The court based the finding on the testimony of Cole, Johnson, and Johnson's son. Johnson, who wanted to retire, was desperate to sell the corporation owning the "Kingfisher." Cole, who did not initiate the transaction, believed he was receiving a remarkable deal. Determination at 3.
 
 
 24
 Nor did the court clearly err in finding that Cole's failure to reveal the purchase price was not a material omission. Although a purchase price reflecting fair market value generally is material to an insurer, here the district court found that because the purchase price did not reflect market value it was not material.
 
 
 25
 The underwriters argue the district court clearly erred in finding Cole had no duty to reveal that he unsuccessfully attempted to sell the "Kingfisher" for $140,000. Again, we disagree. The lead underwriter in the sport fishing department testified that even if Cole had provided such information, it merely would have been noted on the record and it would not have affected either the premium or the decision to insure the vessel. Further, the listed sale price was not necessarily probative of the fair market value of the vessel; Cole testified that he wanted to sell it cheaply and quickly.
 
 
 26
 Hartford Insurance Co. v. Garvey, 1989 A.M.C. 652, cited by the underwriters, is inapposite. In Hartford, the defendant had listed his boat with a brokerage firm with an asking price of $112,500. Id. at 653. It had been surveyed at $125,000. Id. He thereafter sought to insure the boat for $150,000, and then falsely told the insurer the boat had never been surveyed. The court found that the market value of the vessel was no more than $112,500. Id. at 659. The court concluded that Garvey intentionally concealed a material fact regarding the market value of the vessel.
 
 
 27
 Here, the district court could have believed Cole's testimony that he offered the "Kingfisher" for sale for less than market value. Cole obtained insurance before he put the vessel up for sale. Further, a survey in Cole's possession which was approximately two years old listed the market value at $225,000, exactly the agreed value insured by the underwriters.
 
 
 28
 Finally, the underwriters argue that the lack of proper Coast Guard documentation and the names of all the licensed operators of the ship were material and that Cole failed to reveal this information. The district court, after finding that Cole did not intentionally misrepresent this information, implicitly found that these facts were immaterial to a reasonable insurer in bearing the risk or in setting the premium rate. Closing Argument, at 18 (Reprinted in Excerpts of Record, Tab 134) ("I assume that [the lead underwriter] would have said, he should have sent me a report every time the toilet was flushed on the vessel").
 
 
 29
 The district court's findings here are not clearly erroneous. An insurer cannot expect the insured to report to it these relatively minor matters which do not affect the risk assumed.
 
 C. Agency
 
 30
 Although the district court discussed the agency issue in great detail, it never determined whether the surplus lines broker, Donna Ray, was the agent of Cole or the underwriters. Closing Arguments at 43-53. This is understandable, because the court discovered during closing argument that the only time Ray erroneously represented to any insurer that Cole's purchase price was $225,000 was when she obtained price quotes for a new pleasure boat policy to take effect after expiration of the 60-day extension. Id. at 67-73. Thus, the underwriters never relied on any erroneous information supplied by Ray in issuing either the policy or the 60-day extension.
 
 
 31
 D. Illegality of the Contract/Breach of Warranties
 
 
 32
 The underwriters, citing a lack of proper Coast Guard documentation, argue that "the policy is void and subject to rescission because the KINGFISHER could not legally be operated for the purpose for which she was insured." We reject this argument. Cal.Ins.Code § 1903(c) prohibits an insurer from rescinding a marine insurance contract on the ground that the insured concealed a lack of proper documentation, unless the concealment is related to the loss. Here, it was not.
 
 
 33
 The underwriters further argue that they may void the policy because Cole breached Warranty 6 of the policy. Warranty 6 states in part: "Warranted Coast Guard Certificate issued where required and complied with." Warranty 6 (reprinted in Excerpts of Record, Tab 15-20).
 
 
 34
 Cole appears to have breached this warranty when, during the initial term of the policy, he operated the vessel for commercial purposes without proper documents. This breach was immaterial, however.
 
 
 35
 Under Cal.Ins.Code § 448, "[u]nless the policy declares that a violation of specified provisions thereof shall avoid it, the breach of an immaterial provision does not avoid the policy." A California appellate court confronted a similar question in Los Angeles Mutual Ins. Co. v. Cawog, 30 Cal.App.3d 378, 383 (1973). There, the court held that an insured's breach of a coinsurance clause in his fire insurance policy did not relieve the insurer of liability despite the characterization of the clause as a "warranty." The key issue was whether the breach of the warranty was material to the insurer's risk. In this case, like Cawog, breach of the warranty was immaterial to the insurer's risk.[6]
 
 
 36
 Further, once Cole discovered that he lacked the necessary documentation for commercial charters, he no longer operated the vehicle as a commercial charter, but instead used it only for pleasure.[7] Indeed, during the period of the 60-day extension, Cole operated the vessel only for pleasure purposes. At the time the "Kingfisher" sank, Cole was in full compliance with the warranty.
 
 
 37
 E. Exclusion of Portions of Expert Testimony
 
 
 38
 Finally, the underwriters argue that the district court erred when it excluded a portion of their expert witness's testimony by which they attempted to impeach the qualifications of Johnson's surveyor. Johnson's surveyor had set the "Kingfisher's" market value at $225,000. The underwriters' expert would have testified that Johnson's surveyor's company was not registered with the National Association of Marine Surveyors and was impossible to locate. The district court rejected this testimony.
 
 
 39
 A trial court has broad discretion in admitting and excluding expert testimony and its decisions will not be reversed unless "manifestly erroneous." Davis v. Mason County, 927 F.2d 1473, 1484 (9th Cir.), cert. denied, 112 S.Ct. 275 (1991). In this bench trial, we cannot say it was manifest error for the trial judge not to hear that Johnson's expert's company was not registered with the National Association of Marine Surveyors. Even if the district court had admitted this testimony, it could have given it such weight, if any, as the court deemed appropriate.
 
 
 40
 The record shows that the district court carefully considered all of the evidence before it, engaged in lengthy colloquy with counsel to be sure the court understood the parties' arguments and the significance of their relevant evidence. There is no indication in the record before us that the excluded portion of the underwriters' expert's testimony would have had any bearing whatsoever on the district court's findings and decision.
 
 CONCLUSION
 
 41
 The Determination of the district court is AFFIRMED. We REMAND this case to the district court to consider Cole's cross-complaint.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Cole owns all the stock of this corporation whose sole asset is the "Kingfisher," the vessel at issue in this case. Thus, we refer to the defendants as "Cole."
 
 
 [2]
 The parties dispute Cole's equity interest in the motor home. The district court found that the purchase price of the "Kingfisher" "was for a value of between $100,000 and $120,000." Determination at 2
 
 
 [3]
 The underwriters do not appeal the district court's finding against them on the scuttling issue
 
 
 [4]
 The district court implicitly found that Cole made no intentional misrepresentations and engaged in no fraud. Determination at 5-6. This finding is not clearly erroneous. It is based on the testimony of Cole. "[W]hen a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error." Anderson v. Bessemer City, 470 U.S. 564, 575 (1985)
 
 
 [5]
 In support of this argument, the underwriters focus upon the district court's discussion concerning whether the underwriters requested certain information from Cole. Under California law, "[t]he fact that the insurer has demanded answers to specific questions in an application for insurance is in itself usually sufficient to establish materiality as a matter of law." Wilson v. Western Nat'l Life Ins. Co., 235 Cal.App.3d 981, 993 (1991) (quoting Thompson v. Occidental Life Ins. Co., 9 Cal.3d 904 (1973)). Thus, the court's inquiry was probative of the materiality issue
 
 
 [6]
 Warranty 6 does not state that the policy is void upon its breach. In contrast, Warranty 2, concerning sale of the vessel, does so provide
 
 
 [7]
 Warranty 5 recognized that the vessel might be used for "pleasure purposes."